MARY W. BAUGHMAN v. P. C. BAUGHMAN, *et al.*

1. BURDEN *of the Issues.* The party on whom rests the burthen of the issues in an action is the one to first produce his evidence.

2. MARRIAGE CONTRACT, *Competent Evidence to Sustain.* Where a marriage contract is claimed to be void upon the ground that the man was so afflicted with paralysis at the marriage ceremony that he could not comprehend what was passing at the time, it is competent for the woman seeking to sustain the contract to offer in evidence the written and oral declarations of the man made prior and repeated up to within a short time of the ceremony, showing that the relations of the parties were affectionate; that the man had stated he could not live happy without her; that he intended she should have his property, as she helped to make it; that they had corresponded several months, and that the contract of marriage between them had already been made.

3. WITNESS *as to Sanity.* Non-professional witnesses, having sufficient opportunities of observing a person alleged to be insane or *non compos mentis,* may give their opinions as to his sanity or mental condition as the result of their personal observation, after first stating the facts which they observed.

4. DIVORCE—*Effect of Decree—Statute.* Under the statute in this state, a decree of divorce granted at the instance of one party operates as a dissolution of the marriage contract as to both, and the decree is only

incumbered with the statutory restriction that during the six months after the rendition thereof and the pendency of the proceedings to reverse the same, it is unlawful for either of the parties to marry. Upon the expiration of this time, either party is at liberty to contract marriage the same as though the first had never subsisted.

5. MARRIAGE CONTRACT — *When Avoided, When Not.* In order to avoid a contract of marriage on the ground of mental unsoundness, the party alleged to be insane or *non compos mentis* must be incapable of understanding the nature of the contract itself. Mere imbecility or weakness of mind, caused by disease or otherwise, will not be, when unaccompanied by circumstances showing it has been taken advantage of, a sufficient ground for avoiding such a contract. If the powers of the mind of the person alleged to be *non compos mentis* have been so far affected by disease or the decay of his faculties as to render him incapable of knowing the effect of the act he is about to perform, and of intelligently consenting to the marriage ceremony, then there is an incapacity on his part to contract. On the other hand, even if his understanding be weak, still, if the capacity of his mind remains to see things at the time in their true relations, and to form correct conclusions, the contract of marriage will be valid, in the absence of fraud or imposition.

*Error from Wilson District Court.*

ACTION by *P. C. Baughman* and *Barbara Baughman* against *Mary W. Baughman*, commenced June 13, 1881, in the district court of Wilson county, to quiet title to the northwest quarter of the southeast quarter and the south half of the southeast quarter of section 31, in township 28 south, of range 17 east. The plaintiffs alleged that they were the only surviving heirs-at-law of Daniel P. Baughman, deceased; that they were in the peaceable possession of the premises by virtue of being such surviving heirs-at-law; and that the defendant, Mary W. Baughman, set up some claim and title to the premises adverse to their claim and title. The defendant admitted in her answer that plaintiffs were the father and mother of Daniel P. Baughman, deceased; that the latter died seized of the premises in controversy; that he died without issue, but she alleged that for more than twenty years preceding 1879, she was the lawful wife of said Daniel P. Baughman, but that the said Baughman in 1879 obtained a decree of divorce from her in Wilson county, in this state, and that in May, 1881, she and the said Daniel P. Baughman were lawfully

married again at Eureka Springs, in the county of Carroll and state of Arkansas, and that she lived and cohabited with him until his death, which occurred soon after the alleged marriage took place at Eureka Springs; that at said death she was the sole and only heir to all the estate of Daniel P. Baughman, and therefore the owner in fee of the premises in controversy. Plaintiffs contended that the alleged marriage at Eureka Springs was void on two grounds: first, because Daniel P. Baughman was *non compos mentis* at the time of the alleged marriage; and second, because the husband and wife, after a divorce decree and while it is in force, cannot make a new contract of marriage. Trial May 12, 1883, before a court and jury. The jury returned a verdict for the plaintiffs, and judgment was rendered thereon. The defendant filed a motion for a new trial, which was overruled. To the rulings and judgment of the court the defendant excepted, and brings the case here.

*S. S. Kirkpatrick*, for plaintiff in error.

*C. F. Hutchings, T. J. Hudson*, and *C. G. Delano*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: I. It is alleged that the trial court erred in ruling that the burden of proof was on the defendants in error, plaintiffs below, and giving them the opening and closing argument. Upon the petition, answer and reply thereto, the single issue presented was, whether plaintiff in error was legally married to Daniel P. Baughman, and therefore, as his widow, legally entitled to inherit his property. (*Baughman v. Baughman*, 29 Kas. 283.) The petition alleged that the defendants in error were the sole surviving heirs-at-law of said Daniel P. Baughman, deceased. The answer admitted that they were the father and mother of the said Daniel P. Baughman, deceased; admitted that the said Baughman died without issue; and further admitted that defendants in error were in possession of the premises in controversy. The reply did not deny these allegations, and the plaintiff in error asserted in

her answer that she was lawfully married to the said Daniel P. Baughman in 1881, and that by reason thereof she became upon his death the sole and only heir to all of his estate. Under the pleadings, it was not incumbent upon the defendants in error to prove affirmatively the death of Daniel P. Baughman; that he died intestate, or that he died without issue, because all of these facts were admitted in the answer. The allegation in the answer that plaintiff in error was legally married to Daniel P. Baughman in 1881 was the important fact to be established by her upon the trial; otherwise the defendants in error were entitled to recover. The statute reads : "If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents," (Comp. Laws of 1879, ch. 33, § 20;) therefore, upon the plaintiff in error rested the burden of the issue. She was the one to first produce evidence on the trial.

II. The plaintiff in error offered in evidence letters written by Daniel P. Baughman to her prior to the alleged marriage at Eureka Springs, Arkansas, and also offered in evidence the declarations of Baughman that he intended to marry her. The letters were written between January 20, 1880, and May 4, 1881, and tended to show the great affection Daniel P. Baughman had for the plaintiff in error at the time they were written. The declarations were made in the year 1881, just prior to the time Baughman started for Eureka Springs. They were to the effect that he would not rent his dwelling, because he expected to use it, as he expected to marry the plaintiff in error; that he would not have parted with the plaintiff in error, nor have obtained a divorce from her, but for his folks; that he could not live happy without her; that he intended she should have his property, as she had helped to make it; that they had corresponded several months ; and that the contract of marriage between them had already been made. All of this evidence was excluded. This was error. These declarations and statements of Baughman, whether oral or written, were competent, and ought to have been admitted. They

tended to show the affectionate relations of the parties just prior to the alleged marriage, and the agreement on the part of the parties to marry. They also tended to show the assent of Baughman to the marriage, and that he voluntarily carried out an agreement previously entered into on his part. It is true that this evidence would not conclusively prove that Baughman was in possession of sufficient mental faculties to enter into the contract of marriage, but it tended to explain the circumstances under which the marriage contract was consummated, and, with the other evidence in the case, was important for the consideration of the jury upon the question whether Baughman comprehended what was passing at the time the marriage ceremony took place. Again, this evidence would tend in some degree to repel the inference that the plaintiff in error was guilty of fraud or imposition in having the marriage ceremony performed at the time it was. Something is said in the briefs about the letters being illegible. We have not thought it necessary to discuss this question, because the letters appearing in the record are not illegible. A few words, in two or three of the letters, cannot be read, but the sense and meaning of the letters can be readily understood.

III. At the time of the alleged marriage, Baughman was being treated for the disease of hemiplegy, that is, paralysis of one-half of the body. According to the testimony produced upon the trial, this is a brain disease, usually caused by a tumor pressing upon the brain. It may also be produced by a blow; indeed, anything that causes an undue pressure on the brain may produce paralysis. The disease may be either complete or incomplete. When it is complete, one-half of the body is paralyzed; when incomplete, one-half of the body is only partially paralyzed. If the disease comes on quickly, it is called quick hemiplegy; if it comes on gradually, it is called chronic. Quick hemiplegy is more apt to affect the mental faculties than chronic. Where, however, hemiplegy is complete, the mental faculties are generally much impaired. The plaintiff in error, who had lived with Baugh-

man twenty years and was constantly with him for several days preceding the alleged marriage, was requested to state "whether, in her opinion, the deceased was sane, or insane, at the time of the marriage," and was also requested to state "whether, in her opinion, the deceased fully understood and knew what he was doing?" This was excluded, upon the ground that the plaintiff in error was not an expert. Other witnesses, who were acquainted with the deceased in his lifetime, saw him frequently at Eureka Springs, and some of whom had been his attendants for several months, were asked similar questions. Their evidence was also rejected for the same reason. All of this was erroneous. "As a general rule, the opinions of witnesses are not competent evidence, although such opinions may be derived from the witnesses' personal observation, and are sought to be given in evidence in connection with the facts on which they are based. To this rule, there are some exceptions." (*City of Parsons v. Lindsay*, 26 Kas. 426.) One of these exceptions is that non-professional witnesses may give their opinions as to sanity, as the result of their personal observation of the person whose mental condition is in question, after first stating the facts which they observed. This is now the recognized rule in all the states, except Massachusetts, Maine, New Hampshire, and Texas. While such opinions are admissible, yet no general rule can be laid down as to what shall be a sufficient opportunity of observation in the witness, other than it has enabled him to form a belief or judgment thereon. (Rogers on Expert Testimony, §§ 61, 62; Lawson on Expert Evidence, 476; 1 Wharton's Law of Ev., § 451.)

IV. It is also alleged, that as the plaintiff in error was divorced from Daniel P. Baughman in 1879; that the judgment, until reversed, is permanent in its effect; that it is in the nature of a prohibition, and a penalty imposed with the public sanction upon the guilty party; and, therefore, that the plaintiff in error, without the consent of the court granting the decree of divorce, could not remarry the person from whom she was divorced. Under the statute, a divorce granted at the instance

of one party operates as a dissolution of the marriage contract as to both, and leaves them at liberty to contract other marriages the same as though the first had never subsisted. (Laws of 1881, ch. 126, § 1; 1 Bishop on Marriage and Divorce, § 306; *Barber v. Barber*, 16 Cal. 378.) The decree of divorce in this state is only incumbered with the statutory restriction, that during the six months after the rendition of the decree, and the pendency of the proceedings to reverse the same, it is unlawful for either of the parties to marry. It is not claimed in this case that any proceedings were taken to vacate the decree of divorce, and as the alleged marriage did not take place until in May, 1881, the parties, respectively, at that time were free to remarry.

V. As a new trial must be had, a few words are necessary as to the direction of the court to the jury. The defendants in error urge that the alleged marriage at Eureka Springs was absolutely void, because the disease with which Daniel P. Baughman was afflicted had progressed to a stage where his mental faculties were impaired to that extent that he comprehended nothing; that in fact at the time of the marriage ceremony he was *non compos mentis*. The general rule is that every man is presumed to be sane until the contrary is shown, and therefore the burden of proof was on the defendants in error, alleging the marriage contract void by reason of the incapacity or mental unsoundness of Daniel P. Baughman, to prove that fact. It seems to be entirely settled that in order to avoid a contract on the ground of mental unsoundness, there must be an inability to know "what the act is to which the contract relates," or "intelligently to will to do such act." (1 Wharton & Stille's Med. Jur., § 2.) As applied to the alleged marriage in this case, if the incapacity of Baughman was such at the time of the ceremony that he was incapable of understanding the nature of the contract itself, he could not dispose of his person or his property by a matrimonial contract any more than by any other contract. (1 Bishop on Marriage and Divorce, § 127; *Browning v. Reane*, 1 Eng. Ec. 190.) The question, therefore, in the case is: Did Baughman

have possession of his reason at the time of the alleged marriage ceremony so as know the effect of the act he was about to perform, and to be capable of carrying that act into effect? Was his mind at the time of the alleged ceremony capable of intelligently consenting thereto? The mere imbecility or weakness of his mind, caused by disease, would not be, when unaccompanied by circumstances showing that it had been taken advantage of, a sufficient ground for avoiding such a contract. If the powers of his mind had been so far affected by disease or the decay of his faculties as to render him incapable of knowing the effect of the act he was about to perform, and of intelligently consenting to the ceremony, then there was an incapacity on his part to contract. On the other hand, even if his understanding was weak, still, if his capacity remained to see things at the time in their true relations and to form correct conclusions, the contract of marriage will be valid, in the absence of fraud or imposition. (*Jackson v. King*, 15 Am. Dec. 354, and notes.)

VI. Complaint is made that counsel of defendants in error were guilty of misconduct in stating to the jury, in opening the case, that Daniel P. Baughman was divorced from plaintiff in error on account of her adultery. Had the reply, or any of the pleadings, alleged that the divorce was for that reason, the statement would be proper; but in the absence of such an allegation in the pleadings, the introduction of evidence as to the reason of the divorce was not competent, and therefore the reference to the adultery was not proper under the circumstances. If the defendants in error desire to prove this fact, their reply can be amended.

There are other errors in the rulings of the district court, but as these will doubtless be corrected upon a rehearing, we think it a waste of time to make further comments.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.