FRANCIS J. MOORS v. EPHRAIM SANFORD *et al.*

No. 23.

1. NOTE AND MORTGAGE—*Personal Judgment.*  In an action upon a note and a mortgage securing the same, the plaintiff is entitled to judgment for the amount of the note, regardless of the decision of the court as to the validity of the mortgage, when it is conceded that the note was executed by the defendant, that the plaintiff is the owner and holder thereof, and that it is due and unpaid.

2. PLEADING AND PRACTICE—*Holder of Note.*  An objection cannot for the first time be made in this court, that the plaintiff failed upon the trial to show that he was the owner and holder of the note sued on, though such fact was put in issue by the pleadings, when the defendant, without objection, took upon himself the burden of proof upon other issues, and when the whole trial proceeded upon the assumption that the plaintiff was the owner and holder of the note, and that whatever cause of action existed thereon was vested in him.

3. HOMESTEAD—*Question of Law and Fact.*  Whether a tract of land not actually occupied as a residence by the owner and his family should be held to be their homestead and protected as such, because of a claimed intention to return thereto as a place of residence, is dependent largely upon the *bona fide* intention of the owner, and is a mixed question of law and fact to be determined by the trial court.

4. SPECIAL FINDINGS, *Merely Advisory—Court May Substitute.*
When the issues submitted to a jury are not such as entitle the
parties to a jury trial as a matter of right, the court may consider
the answers, which the jury returns to special questions of fact
submitted to it, as merely advisory, and it is not error for the
court in such case to set aside a finding which is contrary to the
evidence, and substitute a finding of its own.

5. EVIDENCE—*Insanity — Non-expert Witness.*    A non-expert
witness should not be permitted to give his opinion as to the
sanity or insanity of one of the signers of a mortgage when the
mental condition of such signer and the validity of the mortgage
are material facts to be tried, unless the witness first states his
opportunity for observation and the facts observed, as the basis
of his opinion.

MEMORANDUM.—Error from Graham district court ;
CHARLES W. SMITH, judge.    Action in foreclosure by
Francis J. Moors against Ephraim Sanford, Samuel N.
Coder, Pauline Coder, The Guaranty Investment
Company, of Atchison, Kansas, and David M. Davis,
receiver of The Guaranty Investment Company, of
Atchison, Kansas.    Judgment for defendants.    Plain-
tiff brings the case here.    Reversed.    The facts are
stated in the opinion, filed October 9, 1895.

*Rossington, Smith & Dallas*, and *F. D. Turck*, for
plaintiff in error.

*M. C. Reville*, and *W. M. Roberts*, for defendants in
error.

The opinion of the court was delivered by

GARVER, J. :  Plaintiff, alleging that he is the owner
and holder of a note and mortgage executed by Eph-
raim Sanford and Mary E. Sanford, his wife, in favor
of the Guaranty Investment Company and transferred
to the plaintiff, brought this action, seeking a per-
sonal judgment against Sanford on the note and a
foreclosure of the mortgage securing the same.    The

petition was filed April 18, 1892. S. N. Coder was made a party defendant, and answered, setting up title in himself by deed of conveyance executed by Ephraim Sanford, Mary E. Sanford being dead, subsequently to the execution of the mortgage, and alleged that the mortgage was invalid for the reason that at the time it was executed the land embraced therein was the homestead of the mortgagor, Sanford, and that the execution of the mortgage by Mary E. Sanford was void because she was, at the time, insane. The case was tried by the court and a jury upon the agreed theory that the plaintiff was vested with whatever rights any one could have under the note and mortgage, and that the only issues to be considered and tried were the homestead character of the land and the insanity of Mrs. Sanford at the time the mortgage was executed. Sanford admitted the execution of the note and mortgage, but denied the other allegations of the plaintiff's petition, and alleged that the land mortgaged was the homestead of himself and family, and that his wife was insane at the time the mortgage purports to have been executed by her. The jury returned a general verdict and special findings of fact in favor of the defendants, upon which judgment was rendered against the plaintiff for costs.

Various errors are assigned by the plaintiff and urged upon this court, but we shall content ourselves with a consideration of only such of them as in our opinion require a reversal of the judgment complained of, passing by such questions as may not arise upon another trial.

Was the plaintiff entitled to judgment against Sanford on the note? The pleadings admitted the execution of the note and mortgage by Sanford, and no

defense of any kind was set up to his liability for the payment thereof. True, the petition alleged the transfer of the note to plaintiff, and that he was then the holder and owner thereof ; and, in the face of the general denial of the defendants, it devolved upon the plaintiff, in the first place, to prove the truth of this allegation of transfer and ownership. At the commencement of the trial, however, it was admitted that the note and mortgage had been transferred to the plaintiff, and the entire trial was conducted upon the assumption that whatever liability existed upon the note was to the plaintiff, and that he was also entitled to the benefit of any lien created by the mortgage. Without objection the defendants assumed the burden of proof, and the case was submitted to the jury by counsel and by the court upon the theory that the only question to be tried was as to the validity of the mortgage. Under these circumstances we cannot conceive how the jury could find generally against the plaintiff's right to recover the amount due on the note, or why such a verdict should be sustained. In this there was not only manifest error but great injustice. The record shows that the note in question was executed by Sanford in consideration of a loan to him of $800 ; that he received the money, and that the whole amount thereof is due and unpaid. The only defense offered to defeat the recovery of this sum is that which aims to wipe out the security of the mortgage upon which the loan was negotiated. The invalidity of the mortgage security, however, cannot affect the maker's liability on the note.

The jury found that the land mortgaged was the homestead of Sanford and family at the time the mortgage was executed. The evidence upon this question is quite conflicting, and, in our opinion,

clearly preponderates against the conclusions of the
jury.   The land was located near the town of Hill
City, and had for some years prior to the making of
this mortgage been occupied as a residence by San-
ford and his family ; but, three or four months before
November 1, 1888, the date of the mortgage, Sanford
had removed from the land and taken up his resi-
dence in Hill City, where he continued to reside until
some time in 1890, when his wife died.   The defend-
ant, Coder, purchased the land from Sanford about
the time or shortly after the mortgage was made,
and took actual possession early in 1889, but a deed
from Sanford to Coder was not executed until about
February, 1893, after the commencement of this ac-
tion.   About January, 1889, Sanford and wife ex-
ecuted a deed of conveyance of the land in which
Coder's mother was named as grantee.   For some
reason, not clearly disclosed, this deed was afterward
either returned or destroyed.

Sanford claims, and testified on the trial, that his
removal from the farm to Hill City was occasioned by
the ill health of his wife ; that it was a mere tempo-
rary absence, and that he intended to return to the
farm as soon as her health would permit.   The evi-
dence tends strongly to show that prior to November
1, 1888, there was an understanding between Sanford
and Coder that Coder would buy the farm for the
price of $1,200, and that the obtaining of this loan of
$800 by a mortgage of the land was a part of the ar-
rangement, so as to require Coder to pay only the ad-
ditional sum of $400.   The homestead idea seems to
be largely an afterthought, and is brought forward
at this time for the purpose of avoiding the collection
of this debt, an object entitled to no equitable con-
sideration.   However, under well-established rules,

whether the homestead claim should be· sustained in any particular case is a mixed question of law and fact, and, upon conflicting evidence, the facts must be determined by the trial court or jury.   To have the homestead character, the land must be "occupied as a residence by the family of the owner."   When occupancy is actual no difficulty usually arises ; but when it is merely constructive, as in this case, it is a question largely of intention on the part of the owner. Apart from the claimant's own testimony, this intention must be judged by the facts and circumstances surrounding the removal from the homestead, and the apparent object and conditions of the subsequent residence elsewhere.

Having determined the homestead question in favor of the defendants, the jury further found that Mary E. Sanford, the wife, was insane at the time she signed the mortgage, and that the plaintiff had knowledge of that fact when he became owner thereof.   The finding of the jury as to the plaintiff's knowledge of the insanity was set aside by the court, and an answer substituted for it to the effect that there was no evidence to show whether he had such knowledge or not. Error is assigned upon this action of the court in setting aside a finding of the· jury and substituting one of its own.   As this case was submitted and tried, we think the court was not concluded by either of the findings of the jury.   There was no issue submitted to the jury upon the right of the plaintiff to recover a money judgment.   They were simply asked to pass upon the validity of the mortgage.   Neither party could demand, as a matter of right, a jury trial for the determination of that question ; and when an issue of that character is submitted to a jury, the answers returned to special questions may be accepted

by the court as merely advisory, to be approved or set aside as the court may deem proper. (*Woodman v. Davis*, 32 Kan. 344; *Stickel v. Bender*, 37 id. 457; *Franks v. Jones*, 39 id. 236.) In this case, the court, with great propriety, might have exercised the same authority with reference to other findings of the jury which are inconsistent with each other, and some of them clearly against the weight of the evidence.

It is further claimed that the court erred in admitting incompetent testimony upon the question of the alleged insanity of Mrs. Sanford. No inquisition had ever been had as to her insanity, and this fact was left for determination by the jury solely upon the testimony given by the witnesses upon the trial. Sanford testified that she was insane and wholly unable to comprehend or to understand any business transaction at the time the mortgage was signed by her. Other non-expert witnesses testified to an acquaintance with her and expressed the opinion that she was insane. Some of the witnesses testified to seeing her several times during the period of three or four years prior to her death in 1890, and gave it as their opinion that she was insane, without designating any particular time when, in their judgment, such insanity existed, and without attempting to state a single fact, circumstance or act indicative of her mental condition. Even Sanford does not pretend to mention a single act or word of his wife which would suggest an unhealthy or abnormal mental state, or which he claimed to have led him to consider her insane. She was sick and weak physically, at times being almost helplesss. About June or July, 1888, Sanford, with a view of benefiting his wife's health, took her on a trip to Utah and was absent for some weeks. After their return and removal to Hill City, a married

daughter was with them much of the time.   Sanford
and Mrs. Sanford signed the note and mortgage to-
gether, in the presence of the notary public.   The
notary testifies that he explained the mortgage to her ;
that she seemed to understand what it was, and that
he saw nothing out of the way or unusual in her
conduct or actions, except that she was weak phys-
ically and needed assistance in moving about the
room.   The jury were undoubtedly influenced to find
that Mrs. Sanford was insane, largely, if not entirely,
by the testimony of the witnesses who came before
them and said that they knew her, and that in their
judgment she was insane, without the statement of
any facts or circumstances as a basis for such opin-
ions.   Such testimony is not admissible.   Before the
opinions of non-expert witnesses should be received
on such a question, they should disclose not only
their opportunity for observation, but should also
state the facts which they observed and which are the
basis of their opinions.   (*Baughman v. Baughman*, 32
Kan. 538 ; *Grant v. Thompson*, 4 Conn. 203 ; *Clapp v.
Fullerton*, 34 N. Y. 190 ; *Rambler v. Tryon*, 7 S. & R.
90 ; *Pidcock v. Potter*, 68 Pa. St. 342 ; *Insurance Com-
pany v. Lathrop*, 111 U. S. 612.)   The mere opinion of
a non-expert witness upon a question of sanity or in-
sanity is, at best, of very uncertain value.   When it
is unaccompanied by a statement of facts which would
enable the trial court or jury to judge of its correct-
ness, and the weight to be given to it, it should not
be permitted to rise to the dignity of competent evi-
dence in any case.   It can only tend to mislead or to
confuse the jury and has no proper place in the just
and legal determination of personal or property rights.

The judgment will be reversed and the case re-
manded for a new trial.

All the Judges concurring.