HEMPEL, Respondent, vs. HEMPEL, Appellant.

*February 10—May 31, 1921.*

*Marriage: Annulment: Fraud, force, or coercion: Confirmation of marriage: Mental capacity of parties: Test: Judgment annulling marriage: Right to appeal: Jurisdiction of court.*

1. In a husband's action to annul his marriage, testimony that the wife, her mother, and her brother told him that he must marry the wife, and that he married because she and her mother were insistent and out of pity for her, is *held* not to support a finding that fraud, force, or coercion had been used to induce the husband to marry, under sub. (4), sec. 2351, Stats., stating grounds for the annulment.

2. The husband, by cohabiting with his wife for six months after marriage, confirmed the marriage even though it had been procured by fraud, coercion, or duress, and was precluded from having it annulled under sub. (4), sec. 2351.

3. The test as to whether a marriage can be annulled because of mental incompetency under sub. (5), sec. 2351, providing for annulment of a marriage entered into with such want of understanding as renders either party incapable of assenting to marriage, is whether the want of understanding rendered the party at the time incapable of assenting or consenting to the making of such a civil contract which marriage is defined to be by sec. 2328, and not whether the party had sufficient mentality to sufficiently measure up to the responsibilities incurred by bringing offspring into the world, notwithstanding secs. 4593*m* and 4593*n*, prohibiting a sane person from intermarrying with a person who is insane, mentally imbecile, feeble-minded, or epileptic, and providing that no

one shall solemnize a marriage to which such a person is a party, as these statutes do not extend the power of the court beyond the limits set forth in sec. 2351, but only provide a penalty for sane violators of the provisions.

*On rehearing:*

4. Failure to raise the objection that there is no right of appeal to the supreme court from a judgment annulling a marriage, until after the decision of that court, or even the respondent's express or implied consent to have the hearing, would not confer jurisdiction on the supreme court if in fact there is no right of appeal.

5. An appeal from a judgment annulling a marriage is an appeal from a judgment in a civil action, and the right to an appeal is included in the general statute providing for appeals (sec. 3039, Stats.).

6. Sec. 3041 does not grant or create a right of appeal, but provides an additional limitation within which an appeal from a judgment in a divorce action may be taken.


APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

This action was commenced May 12, 1919, to annul a marriage of June 26, 1917.

The amended complaint alleged as a first cause of action that at the time of the marriage the defendant was mentally incompetent and an imbecile; that the plaintiff was ignorant of such condition and that the defendant and her mother through trickery induced the plaintiff to marry the defendant; that the defendant, being mentally incompetent, had no right to enter into a marriage relation; that by virtue of such fraud the plaintiff became and is the husband of the defendant, and prays that the marriage be annulled on the ground of fraud.

For a second cause of action, that the defendant wilfully deserted the plaintiff on or about May 8, 1918.

The relief prayed for was either that the marriage be set aside or a divorce granted. There was a general denial by defendant as to each cause of action.

.The findings of fact included the following:

"The court finds that at the time of said marriage the defendant was mentally incompetent and an imbecile, and did not have sufficient mental capacity to understand the marriage relation, and that the plaintiff was induced to marry said defendant through fraud and deception on the part of the defendant and her mother.

"The court finds that the plaintiff did not know of said mental incompetency at the time of said marriage, and believed that the defendant was sound of mind.

"The court finds that, the plaintiff and. defendant were not well acquainted and that the plaintiff lacked opportunity to observe and know the true mental condition of the defendant."

The judgment determined that the marriage be set aside and annulled and both parties completely freed from all obligation thereof, that the records concerning said marriage be expunged and it be declared void. From such judgment the defendant has appealed.

For the appellant there was a brief by *Dillett & Fischer* of Shawano and *F. Y. King* of Tigerton, and oral argument by *Mr. King*.

For the respondent the cause was submitted on the brief of *Eberlein & Larson* of Shawano.

The following opinion was ·filed March 8, 1921:

ESCHWEILER, J.  The claim by plaintiff in his original complaint and renewed in the amended complaint for a divorce on the ground of desertion was apparently abandoned by him on the trial and no findings made with reference thereto by the court.

The defendant was at the time of the trial about twenty-seven years of age; the plaintiff's age does not appear. Plaintiff had known defendant some two years prior to the marriage in 1917 and had corresponded with her during

that period.   He had visited at her home about twice within the two months preceding the marriage.   She had also visited at his home.

Testimony was received from three physicians, one of whom had known the defendant from early childhood.   The testimony of the latter is to the effect that the defendant has ideas which are not corresponding with the normal active brain, and while he would not call her directly insane he would call her feeble-minded, and that a home for the feeble-minded would be the proper place for her; that her condition is of long standing; that from his knowledge and examination he would say that she is absolutely not a proper person to be married and have the cares of motherhood; that physically and mentally she would not be responsible for the child.   The child would not be led intelligently, and she could not give the proper mental training to the child.

Another physician who examined her at the time of the trial classified her as mentally weak and that the proper place for a person in her condition is in some home for the feeble-minded; that she is hardly fit to give birth to a child; that her offspring would be very apt to be of a feeble-minded character unless the father was an exceptionally bright man mentally; that her case is one where the brain has never developed.   She is a child in a good many respects.

The third physician who was called as a witness for the defendant and who had examined her just before the trial testified that she was feeble-minded, with a type of insanity which he called melancholia; that he did not believe she has mental development; that he did not think she is of sufficient understanding to know to a greater or less degree the responsibilities of marriage; that the degree of feeble-mindedness is very slight.

The plaintiff testified that shortly prior to the marriage the defendant, her mother, and defendant's brother-in-law

met him when he was working on the road and told him he must marry the defendant; that shortly afterwards he accompanied the defendant to the county seat for the purpose of giving additional data needed for the obtaining of the marriage license; that he then returned to his own home and within a day or two thereafter went to defendant's home and was there married. The plaintiff suggests that he married the defendant because she and her mother were insistent that he should and that out of considerations of pity for her he did agree to do so.

After the marriage the two lived together in their own home for at least six months. Plaintiff then went to work in the woods and the defendant went to live with her sister. The plaintiff was then drafted in the army and was in service from July 22, 1918, to February 10, 1919. The plaintiff on entering the service tried to arrange that the allotment pay for the support of the family should be paid to his mother rather than to the defendant. She, however, was able to have it so provided that payments were made to her amounting to about $200 during the time of his service. He contributed nothing else to her support during this time. While in the service he wrote to her and made what he admits was a false statement to the effect that he was keeping company with some other woman, and this was, as he says, for the avowed purpose of inducing her not to pester him any longer; that he desired in this manner to get rid of her. He did not visit her after his return from the army, and during the pendency of this action paid a portion only of the alimony provided for by order of the court.

Plaintiff also testifies that he did not know of her mental condition at the time of the marriage, but did ascertain the same within two weeks after the marriage; that it was disclosed to him by what he designates as spells, one of them in particular in which she claims she saw the furniture

moving about. She testified as to the same occurrence and said it was no more than the recital to him of a dream that she had. He testified also as to a violent scene he had with her the day following the marriage. She testified as to the same occurrence that it was anger on her part at his boasting to her of some former sweetheart.

It conclusively appears, however, in this record that after his obtaining knowledge of her lack of mental capacity as early as two weeks after the marriage he nevertheless continued to cohabit with her, accepted money from her for the purchase of some of the household furniture and for their support, permitted her to handle the family funds, accepted her domestic services, and permitted her to assist in work in the field with him on his father's farm. She suffered two miscarriages during her married life, one in January following the marriage, and the second in the following October.

There is no suggestion in the record of any sexual relations between her and the plaintiff before marriage or of even any improprieties by her with any other man at any time.

To support this judgment warrant for it must be found under the statute granting power to the circuit court to annul marriages for certain causes existing at the time of the marriage. The parts of the section which are material here are as follows:

"Section 2351. . . .

"*Fraud, etc.* (4) Fraud, force, or coercion, at the suit of the innocent and injured party, unless the marriage has been confirmed by the acts of the injured party.

"*Insanity.* (5) Insanity, idiocy, or such want of understanding as renders either party incapable of assenting to marriage, at the suit of the other, or at the suit of a guardian of the lunatic or incompetent, or of the lunatic or incompetent on regaining reason, unless such lunatic or incompetent,

after regaining reason, has confirmed the marriage; provided that where the party *compos mentis* is the applicant, such party shall have been ignorant of the other's insanity or mental incompetency at the time of the marriage, and shall not have confirmed it subsequent to such person's regaining reason."

We can find no support for the relief granted by the trial court in this case under any authority granted by sub. (4) just above quoted. There is no evidence here which would support a finding that either fraud, force, or coercion had been used as against the plaintiff in order to induce the entering into the marriage. Not a particle of evidence that any concealment of or any misrepresentation as to her mental condition was attempted or made. There is no showing here of fraud such as would support a judgment of annulment. *Behsman v. Behsman,* 144 Minn. 95, 174 N. W. 611, 7 A. L. R. 1501. If any such had been used, his cohabiting with the defendant would have been such confirmation of the marriage as would have taken away his right to have it annulled on any such grounds.

There was no finding made, or evidence which would have supported a finding, of either insanity or idiocy such as is specified in sub. (5), *supra,* existing in the defendant at the time of the marriage ceremony. No question can therefore arise here as to the effect that should be given to the language, "No insane person, epileptic or idiot shall be capable of contracting marriage," as found in sub. (1), sec. 2330, Stats., defining the classes of persons who shall not marry.

There is left but one possible ground upon which this judgment can be supported, namely: Was there in defendant at the time of the marriage "such want of understanding" as rendered her "incapable of assenting to a marriage?" The findings of the trial court were not framed to and do not meet that condition so prescribed by the statute.

Sec. 2328, Stats., reads: "Marriage, so far as its validity

in law is concerned, is a civil contract, to which the consent of the parties capable in law of contracting is essential." This particular marriage ceremony cannot be annulled upon the ground claimed here by plaintiff to be presented under said sub. (5), sec. 2351, *supra,* unless defendant's want of understanding rendered her at the time incapable of assenting or consenting to the making of such a civil contract as marriage is declared to be. The law has not declared that this is to be tested by determining whether the parties thereto are of sufficient mentality to measure up to the responsibilities incurred by bringing offspring into the world, but solely on the question as to whether or not there was understanding and mental capacity sufficient to realize what was then being done and consenting thereto. *Baughman v. Baughman,* 32 Kan. 538, 4 Pac. 1003; *Adams v. Scott,* 93 Neb. 537, 141 N. W. 148; *Coleman v. Coleman,* 85 Oreg. 99, 166 Pac. 47; *Van Haaften v. Van Haaften,* 139 Mich. 479, 102 N. W. 989. See, also, note to 38 L. R. A. N. s. 819.

The evidence in this case clearly discloses that the defendant was capable of assenting to and did assent to marry the plaintiff. She testified that plaintiff wrote her and told her that if he couldn't marry her he would hang himself; that she didn't want him to do that; that she loved him then and does yet. She says they married because "he wanted me and I wanted him." We doubt if Eve in her pristine innocence or any other of her daughters of today, however mentally gifted, could have better expressed more concisely or accurately the idea of mutual consent to marriage. It is the plaintiff who harks us back to the time of Kavvah by his Adam's plea that the woman gave me of the tree and I did eat, but, without the courage of Adam to stand by his woman, he now, after long tasting, seeks to eschew. The evidence is clear and satisfactory that she appreciated that she was to forsake all others and remain faithful unto him. There is no evidence in the record to indicate that her mind,

however much like that of a child it might be, did not appreciate such obligations or that she did not continue to bear them in mind and live up to them.

The respondent further contends that this marriage should be annulled by the effect to be given to the following statutes:

"Section 4593m. (1) No man and woman, either of whom is insane, mentally imbecile, feeble-minded or epileptic, shall intermarry.

"(2) No person authorized to solemnize marriages shall unite in marriage any man and woman either of whom is insane, mentally imbecile, feeble-minded or epileptic, nor shall any person advise, aid, abet, cause or assist in procuring or countenancing any violation of this section."

"Section 4593n. Any sane person violating any of the provisions of section 4593m shall, upon conviction, be deemed guilty of a misdemeanor and be punished by a fine of not less than fifty dollars nor more than one hundred and fifty dollars, or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment."

The provisions of these statutes, however, are not to be construed as giving a court any further or wider power in annulling a marriage than is to be found within the provisions of sec. 2351, *supra*. The penalty in sec. 4593n expressly provides a punishment against the sane violator of sec. 4593m, not against the unfortunate individuals.

It has expressly been held that a marriage made by such persons as are so specified in sec. 4593m, *supra,* is not for that reason void. *Estate of Jansa,* 169 Wis. 220, 171 N. W. 947.

While it is true, as has often been said, that the state is in a large measure an interested third party to the marriage contract as a conservator of the public welfare, yet it has marked out by statutory declaration the limits within which its courts may act with reference to this relationship, and within those limits courts must remain. The right of the

state to care for the feeble-minded is in nowise impaired by a result such as is here reached.

The plaintiff as one party to such marriage contract, not being found to be within the situation contemplated by the statute giving authority to the circuit court to annul a marriage, is not entitled to the relief granted him by the court below.

It follows therefrom that the judgment must be reversed and the complaint dismissed.

*By the Court.*—Judgment reversed.

The following opinion was filed May 31, 1921:

PER CURIAM.    Upon respondent's motion for a rehearing in this court he now suggests, and for the first time, want of jurisdiction in this court to entertain the appeal upon the claim that the judgment in the court below annulling the marriage is one from which there is no right of appeal.

If this contention be correct, mere failure on his part to raise the question earlier, or even his express or implied consent to have the matter heard, as it has been, would not give this court jurisdiction and no other action could be properly taken than a dismissal of such an attempted appeal. *Wis. R. E. Co. v. Milwaukee,* 151 Wis. 198, 201, 138 N. W. 642; *Wildes v. Franke,* 157 Wis. 189, 190, 146 N. W. 1119; *Puffer v. Welch,* 141 Wis. 304, 124 N. W. 406.

This action is one of the several kinds of actions provided for in ch. 109, Stats., entitled "Divorce," and jurisdiction is conferred upon the circuit court by sec. 2348 in providing for actions to affirm or annul a marriage, for divorce from the bond of matrimony, or from bed and board; and said section also provides:

"All such actions shall be commenced and conducted and the orders and judgments therein enforced according to the

provisions of these statutes in respect to actions in courts of record, as far as applicable, except as provided in this chapter."

The only provision to be found in this chapter on the subject of appeal is found in sec. 2374, and by sub. 4 thereof provision is made for review of a *judgment of divorce* by appeal.

In sec. 2351, providing for the kind of action that was brought here, namely, for the annulment of a marriage, nothing is found relating to reviews in this court of such judgments, and the same is true as to the proceedings to affirm a marriage under sec. 2352.

By ch. 132 of the Statutes provision is made for writs of error and appeals to this court. Sec. 3039, so far as material here, provides as follows:

"The time within which a writ of error may be issued or an appeal taken to obtain a review by the supreme court *of any judgment* or order in any civil action or special proceeding in a court of record is limited to one year from the date of the entry of such judgment or order."

And then follow certain exceptions and conditions not material here.

As a part of the same chapter is found a provision relating to appeals in divorce actions, and this reads as follows:

"Section 3041. The time within which an appeal may be taken from *any order* modifying or revising a *judgment* of divorce, so far as it determines the status of the parties to the action, is limited to six months from the date of the entry of such order."

Before the enactment of ch. 239, Laws 1911, which with the prior enactment of ch. 323, Laws 1909, made substantial changes in the laws relating to divorce, this sec. 3041 and as it stood in the Revised Statutes of 1878, 1889, and 1898 provided for the same limitation of six months within which an appeal could be taken, not only from *"judgments* of di-

vorce dissolving the marriage bonds," but also "from so much of a *judgment as annuls* a marriage." Respondent now contends that, inasmuch as in the old form of sec. 3041, as just above quoted, there was the express mention of an appeal from a judgment annulling a marriage, there was thereby given and created the right of an appeal from such judgment, and the subsequent revision of the divorce law and the striking out of the above quoted provision from sec. 3041 by ch. 239, Laws 1911, indicated a legislative intent to do away with any such theretofore recognized right of appeal.

We however do not deem it necessary to go further into detail of the changes made in the divorce law and of sec. 3041 because we are convinced that sec. 3041, *supra,* both before its amendment in 1911 and now, did not and does not grant or create any right to an appeal, but merely provided and provides for additional limitations than the time limitation mentioned in the general statutes providing for appeals. Sec. 3039, *supra.* The judgment here in question being manifestly a judgment in a civil action in a court of record, the right to an appeal therefrom is included in the provisions of sec. 3039, and, there being found no present exception or limitation as to this kind of judgment, there is no valid objection to the court's jurisdiction.

Upon all the grounds presented in the motion for a rehearing it must be denied, with $25 costs.