JASTER, Plaintiff, vs. MILLER, Respondent: KUJAK and others, Appellants. [Two cases.] *

*February 9—March 8, 1955.*

---

* Motion for rehearing denied, with $25 costs, on May 3, 1955.

224

For the appellants Kujak, d/b/a Walske Transfer, there were briefs by *Engelhard, Snodgrass & Goerdt* of La Crosse, and oral argument by *Lawrence M. Engelhard*.

For the appellants Moore Motor Freight Lines and Bruce Dodson there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns*.

For the respondent there was a brief by *Hale, Skemp, Nietsch, Hanson & Schnurrer* and *Bosshard & Arneson*, all of La Crosse, and oral argument by *Thomas H. Skemp* and *Philip G. Arneson*.

MARTIN, J.   Counsel for Miller contends that since the bill of exceptions does not contain any motions made by the parties after verdict, this court may not properly review the evidence on appeal, citing *Plankinton v. Gorman* (1896), 93 Wis. 560, 67 N. W. 1128, and *Cayouette v. Emil T. Raddant B. Co.* (1908), 136 Wis. 634, 118 N. W. 204. The contention is without merit. In those cases there were no written motions and, no oral motions being preserved in the bill of exceptions, this court held it could not review the evidence because there was no showing that the proper motions had been made. Written motions and a written decision thereon are of record here. It is immaterial that they are not incorporated into the bill of exceptions.

The crux of this entire case lies in the sharply conflicting evidence as to the position of the Miller car at the time of the accident.   Miller maintained that after pulling completely onto the shoulder he stayed there until the impact occurred. Kujak's testimony was that the Miller car pulled onto the shoulder when he was 800 feet behind and that it stayed on the shoulder until he was 50 to 70 feet behind, when it turned left onto the highway. While Jaster could not tell whether or not the car was completely on the shoulder, he testified that from a block behind he saw "it was to the extreme right of us," "it was entirely to our right;" that when the truck was within 70 to 80 feet it "was in front of us;" that Kujak did not get over on the shoulder at any time while approaching the Miller car. None of the witnesses testified that Miller gave a signal of intention to turn.

The two versions were irreconcilable and the jury had to choose one or the other. When the accident happened either the car was completely on the shoulder, as Miller and his witnesses testified, or it was coming from the shoulder onto the highway, as Kujak testified and as is consistent with Jaster's testimony.

In submitting to the jury the question of Miller's negligence as to position on the highway, the court gave three separate instructions (which we number for convenience in referring to them) :

(1) "You will notice from the foregoing statutes that a person cannot make a turn upon a highway either to the right or the left without giving an appropriate signal to traffic to his rear, of his intention to make such a turn, and such a signal must be for a distance of not less than 100 feet prior to the turn.

"Therefore, if you should find from the evidence that Carlet Miller was making a turn at the time of the collision and that he did not give an appropriate signal of his intention to make such turn, then you will find him negligent in that respect."

(2) "You will note that the statute prevents a person from moving either to the right or left upon a highway unless such movement can be made with safety. Therefore, if you should determine that Carlet Miller moved to the left from the shoulder and onto the highway at such a time and to such an extent as to create a dangerous situation, then you will find him negligent in that respect."

(3) "The statutes further provide that the operator of any vehicle that has been parked shall, while moving from such position, yield the right of way to all vehicles approaching on such highway. . . ."

The second was the only instruction which the evidence permitted. Neither (1) nor (3) should have been given since there is no evidence in the record that Miller may have signaled an intention to turn or that the Miller car had been parked prior to the collision.

In finding Miller negligent as to his position on the highway the jury rejected his story that the car was completely on the shoulder when hit, and accepted the version testified to by Kujak and Jaster that Miller came onto the highway from the shoulder in front of the truck. The

presence of the debris on the concrete tends to support the finding that the car was struck while on the pavement rather than on the shoulder.

In the light of the jury's finding on that question, the finding of negligent lookout on the part of Kujak cannot stand. If, as the jury concluded, the accident happened as and where Kujak said it did, it follows that he saw everything there was to see. He testified that his attention was never diverted from the Miller car from the moment he first saw it from the top of the hill. He described its position in detail as he observed it from that time to the moment of impact. Jaster's testimony as to the position of the Miller car, as he observed it from the time it was a block ahead of the truck, corroborates Kujak in what he saw. As to just when the Miller car came out in front of the truck, Kujak stated it was then 50 to 70 feet ahead, Jaster, that it was then 70 to 80 feet ahead. There is no conflict on that point; obviously both are estimates.

Counsel for Miller argues that neither the occupants of the Miller car nor Jaster saw a car approach from the west just before the collision, which Kujak testified he saw. But Miller stated he kept "one eye" on the rear-view mirror all the time the truck was approaching from behind. Mrs. Miller said she turned around and looked back once during that time, and the record indicates she and her husband were discussing something about the truck as it was catching up to them. Donna Mashak's entire testimony is negative in character. So far as Jaster is concerned, he admitted he paid little attention to traffic on the road. None of the witnesses except Kujak testified to paying constant attention to the road ahead. His positive testimony is not overcome by the negative testimony of the other witnesses. Under the circumstances, the fact that they did not see what he saw does not urge the conclusion that his lookout was faulty; rather it would tend to show that he was maintaining the more efficient lookout. In any event, it is his lookout with

respect to the Miller car which is in point, since it is not contended that anything he saw or did about the other car had any causal connection with the collision. Kujak saw everything that the Miller car did and there is nothing in the physical facts nor in the testimony to dispute that.

There being no evidence to support the finding of negligent lookout on the part of Kujak, a new trial must be had on all issues except damages, to which no objection has been made.

Counsel for Miller contends that the trial court erred in refusing to admit in evidence the entire statement of Eugene Jaster taken, without notice, at Battle Creek, Michigan, on November 12, 1951, and asks for review of the trial court's ruling. When the statement was offered objection was made to its use for any purpose other than impeachment of testimony Jaster had given on the stand. It was admitted for impeachment purposes and those portions of it which related to matters on which Jaster had testified were used. The trial court properly so ruled. Any such statement, inconsistent with Jaster's testimony on the trial, might be binding on Jaster as a party to the action, but it cannot be substantive evidence of a fact, binding upon Kujak, an adverse party. 58 Am. Jur., Witnesses, p. 421, sec. 770; *Hamilton v. Reinemann* (1940), 233 Wis. 572, 290 N. W. 194; Anno. 133 A. L. R. 1454. When the Jaster claim was settled during the trial, counsel for the parties stipulated that all the evidence adduced thus far should have the same force and effect during the remainder of the trial as it would have had if no settlement had been made. At the time the stipulation was made Miller's counsel stated, "I am not asking anything except that the record stay as it is, including the rulings of the court."

There is a motion before this court to dismiss the appeal of Walske Transfer from "the findings of fact, conclusions of law, and order for judgment" signed on June 15, 1954,

in so far as judgment was ordered in favor of Dodson in the amount of $4,000, being the amount paid by Dodson in settlement of the Jaster claim.

The adjudication in favor of Dodson, as well as that in favor of Miller, was embodied in one judgment filed July 9, 1954. Notice of appeal by Walske Transfer from the Miller judgment and from the June 15th findings, conclusions, and order for judgment in favor of Dodson, was served September 14, 1954.

Sec. 274.33 (1), Stats., defines what orders may be appealed to the supreme court:

"An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken."

This court has consistently held that under sec. 274.33, Stats., an order for judgment is not appealable. *Weiler v. Herzfeld-Phillipson Co.* (1926), 189 Wis. 554, 208 N. W. 599; *Witzko v. Koenig* (1937), 224 Wis. 674, 272 N. W. 864. Nor are findings of fact and conclusions of law appealable. *Thoenig v. Adams* (1940), 236 Wis. 319, 294 N. W. 826.

Walske Transfer contends that relief may be had, notwithstanding, under sec. 269.51 (1), Stats., which provides:

"When an appeal from any court . . . is attempted to any court and return is duly made to such court, the respondent shall be deemed to have waived all objections to the regularity or sufficiency of the appeal or to the jurisdiction of the appellate court, unless he shall move to dismiss such appeal before taking or participating in any other proceedings in said appellate court. If it shall appear upon the hearing of such motion that such appeal was attempted in good faith the court may allow any defect or omission in the appeal papers to be supplied, either with or without terms, and with the same effect as if the appeal had been originally properly taken."

We do not question that the appeal was attempted in good faith and this court is always ready, upon proper application, to allow defects or omissions in appeal papers to be supplied. But the language "the respondent shall be deemed to have waived all objections to the regularity or sufficiency of the appeal *or to the jurisdiction of the appellate court"* cannot be construed to mean that jurisdiction which the court does not otherwise have may be conferred by such waiver. The statute must be held to apply only to such matters as are in their nature appealable. The right to appeal is statutory and exists only when and to the extent that the statute grants it.

"Failure to raise the objection that there is no right of appeal or even the respondent's express or implied consent to have this court pass upon the matter does not confer jurisdiction on this court, if in fact there is no right of appeal. *Hempel v. Hempel,* 174 Wis. 332, 181 N. W. 749, 183 N. W. 258." *Richter v. Standard Mfg. Co.* (1937), 224 Wis. 121, 126, 271 N. W. 14, 271 N. W. 914.

There is no right of appeal from an order for judgment. It is such an order from which the appeal here is attempted. There is a judgment embodying the adjudications contained in the order, and it is obvious that counsel intended to seek relief in this court from those provisions, but he did not do so. Whatever counsel's reasons may have been for overlooking the judgment, the fact is that it was on file on July 9, 1954, and from then until September 14, 1954, when he served his notice of appeal, he had ample opportunity to learn of its existence.

Neither the waiver or consent of a respondent, nor the willingness of this court to consider a matter in the interests of justice, gives us authority to take jurisdiction where none is conferred by law. The motion to dismiss the cross appeal is granted. Because a new trial must be had between Miller and the appellants, that portion of the judgment against

Walske Transfer for reimbursement to Dodson for any payment to Miller falls by the wayside. Our dismissal of the cross appeal with respect to Dodson's recovery of reimbursement for the $4,000 paid in the Jaster settlement should not be construed as a decision on the merits as to the reimbursement issue which would be determinative of such issue in the new trial either on the theory of *res adjudicata* or "law of the case."

*By the Court.*—That part of the judgment appealed from is reversed, and cause remanded with instructions to grant a new trial on all issues between Miller and the appellants except damages. The motion to dismiss the cross appeal is granted.