GELHAAR, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 28. Argued December 3, 1968.—Decided January 9, 1969.*
(Also reported in 163 N. W. 2d 609.)

---

* Motion for rehearing denied, without costs, on March 4, 1969.

232

236

For the plaintiff in error there was a brief and oral argument by *Allen L. Samson* of Milwaukee.

For the defendant in error the cause was argued by *Terence T. Evans,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney.

HANLEY, J. Defendant attacks the order denying a new trial on these two grounds:

1. Prior inconsistent statements of witnesses are not competent evidence; and

2. There is insufficient credible evidence to sustain her conviction.

Defendant's basic objection on this review is that the evidence was insufficient to support the verdict because there was no competent evidence on the issue of defendant's intent to commit murder. Defendant concedes that the statements of Mark and Christine Gelhaar would have established the necessary intent, but these statements were only admissible as prior inconsistent statements.

"This court has long adhered to the majority rule that previous inconsistent statements of a witness cannot be accorded any value as substantive evidence. . . ." *State v. Major* (1956), 274 Wis. 110, 112, 79 N. W. 2d 75.

The statements of the Gelhaar children were allowed into evidence without any objection by defendant's trial counsel. The trial court did not sua sponte instruct the jury that the statements were admissible for purposes of impeachment only, either at the time the statements were given or at the close of the case.

### *Admissibility of Statements.*

"The general rule is almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding

as admissions is admissible only to impeach or discredit the witness, and is not competent as substantive evidence of the facts to which such statements relate." Annot. (1941), 133 A. L. R. 1454, 1455.

The reasoning behind the rule is set out in 58 Am. Jur., *Witnesses*, p. 421, sec. 770:

". . . The reason assigned, where any is given, is that if such statements were taken as proof of the facts stated, the testimony would be hearsay. . . ."

Professor John Wigmore takes exception to this reasoning in 3 Wigmore, *Evidence* (3d ed. 1940), pp. 687, 688, sec. 1018:

"It does not follow, however, that Prior Self-Contradictions, when admitted, are to be treated as having no *affirmative testimonial* value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the Hearsay rule. But the theory of the Hearsay rule is that an extrajudicial statement is rejected because it was made out of Court by an absent person not subject to cross-examination . . . Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve. Psychologically of course, the one statement is as useful to consider as the other; and everyday experience outside of court-rooms is in accord."

McCormick, *Evidence* (hornbook series 1954), pp. 73–82, sec. 39, presents an even more compelling argument which we will attempt to summarize.

Professor McCormick first sets forth the majority rule and the reasoning behind it. But he goes on to state:

"Nevertheless, there are reasons for a contrary view, that the statements should be received as 'substantive'

evidence of their truth. These reasons are not so obvious. They depend upon judgments as to the balancing of values, but the more maturely they are considered, the more impressive they seem." McCormick, *supra,* at page 74.

Professor McCormick contends that the two safeguards of the truth of testimony are the oath (with its penalty for perjury) and cross-examination. Of these, the most important is cross-examination. But, for all practical purposes, this safeguard is available when extrajudicial statements are used to impeach a witness.

". . . It is hard to escape the view that evidence of a previous inconsistent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony.

"Accordingly, if we look to the procedural guaranties of truth of the prior statement and of the present testimony of the same witness, we can only conclude that they stand approximately equal, . . ." McCormick, *supra,* at page 75.

But another factor makes the *prior* inconsistent statement even more trustworthy than testimony.

". . . The prior statement is always nearer and usually very much nearer to the event than is the testimony. . . .

"Manifestly, this is not to say that when a witness changes his story, the first version is invariably true and the later is the product of distorted memory, corruption, false suggestion, intimidation, or appeal to sympathy. No, but the time-element plays an important part, always favoring the earlier statement, in respect to all of these hazards. . . ." McCormick, *supra,* at pages 75 and 76.

There is a further reason favoring the use of prior statements substantively. The attempt to deny the full probative effect to such statements is, even charitably considered, usually ineffectual. The evidence of prior statements goes to the jury anyway as impeaching evidence, but the jury is ordinarily instructed that it can consider the evidence solely as bearing on the credibility of the witness.

240

". . . Such an instruction, as seems to be generally agreed, is a mere verbal ritual. The distinction is not one that most jurors would understand. If they could understand it, it seems doubtful that they would attempt to follow it. Trial judges seem to consider the instruction a futile gesture. If the prior statement and the present testimony are to be considered and compared, what is the purpose? The intuitive good sense of laymen and of lawyers seems to agree that the only rational purpose is not merely to weigh the credibility of the testimony, but to decide *which of the two stories is true.* To do this is ordinarily to decide the substantive issue." McCormick, *supra,* at page 77.

Then McCormick discusses a subject which is particularly pertinent to this appeal. When the state's only witness to a material fact in a criminal case is cross-examined by a prior inconsistent statement, the jury can use the inconsistent statement to cancel the witness' testimony. Thus it makes no difference whether the statement is considered as "substantive" or "impeaching" evidence. The result is the same, *i.e.,* a verdict for the defendant. But when the state has only an inconsistent statement from the defendant's witness, it cannot even get to the jury. Basically that is what defendant is contending here. The only evidence of intent could come from the children. Even if their testimony at the trial is disbelieved by the jury, there is no "substantive" evidence of intent in the case.

". . . The argument seems persuasive that if the previous statement and the circumstances surrounding its making are sufficiently probative to empower the jury to disbelieve the story of the witness on the stand, they should be sufficient to warrant the jury in believing the statement itself." McCormick, *supra,* at page 78.

Thus we are now convinced that a jury should be able to consider the prior inconsistent statements of the wit-

nesses as substantive evidence. Previous Wisconsin cases which have held to the contrary [1] are therefore expressly overruled.

We are not convinced, however, that this rule should be adopted without limitation. Accordingly, we now adopt a modified form of the rule proposed by Professor McCormick:

" 'A statement made on a former occasion by a declarant having an opportunity to observe the facts stated, will be received as evidence of such facts, notwithstanding the rule against hearsay if

" '(1) the statement is proved to have been written or signed by the declarant, or to have been given by him as testimony in a judicial or official hearing, or the making of the statement is acknowledged by the declarant in his testimony in the present proceeding, and

" '(2) the party against whom the statement is offered is afforded an opportunity to cross-examine the declarant.' " McCormick, *supra,* at page 82.

We also add a third condition, however, which is intended to limit the use of prior statements as substantive evidence to impeachment situations only.

and (3) the witness has testified to the same events in a contrary manner in the present proceedings.

In adopting the foregoing rule, we wish to point out that the A. L. I. Model Code of Evidence (1942), Rule 503, p. 231, also suggests that prior statements of witnesses be given substantive evidentiary value.

"Evidence of a hearsay declaration is admissible if the judge finds that the declarant

" . . .

"(b) is present and subject to cross-examination."

---

[1] *State v. Major, supra; Hamilton v. Reinemann* (1940), 233 Wis. 572, 290 N. W. 194; *Jaster v. Miller* (1955), 269 Wis. 223, 69 N. W. 2d 265; *Hilton v. Hayes* (1913), 154 Wis. 27, 141 N. W. 1015.

We purposely have not extended the rule herein adopted to include prior *consistent* statements.[2] We do not feel that self-serving statements have the same evidentiary value as prior inconsistent statements. Moreover, a witness will have already testified to the matters contained in a prior consistent statement. Therefore that evidence is before the jury as substantive evidence already.

We also wish to point out that the adoption of the new rule has no effect on the present statutory regulation [3] concerning the impeachment of a party's own witness in a criminal action. We hereby expressly limit the newly adopted rule to the impeachment of an opposing party's witness.[4]

### Sufficiency of Evidence.

The defendant's contention that the evidence was insufficient to support a verdict of first-degree murder fails whether the statements of the Gelhaar children are considered as substantive evidence or not.

The defendant herself admitted to the police on the night of the incident

". . . he dared me to do it, he threatened to leave me, I couldn't let him do that . . ."

---

[2] Both the A. L. I. Model Code of Evidence and Professor McCormick state that prior consistent statements should be treated in the same manner as prior inconsistent statements.

[3] Sec. 885.35, Stats.

[4] That the new rule should apply to hostile witness situations seems like a logical extension. However, we decline the present opportunity to create such a rule because the legislature has acted in this area. Sec. 885.35, Stats., as it has been interpreted by this court in *State v. Major, supra,* does not permit the introduction of a hostile witness' statement as substantive evidence in a criminal case.

While there is no statute governing the evidentiary value of a hostile witness' statement in a civil case, we do not extend the newly adopted rule to cover that situation at this time.

Defendant also stated to a second officer on the night of the incident that all she could remember was picking up the knife and coming down on her husband.

"The law presumes that a person intends the natural and probable consequences of his own acts . . . ." *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354.

The jury was so instructed. Although the presumption is rebuttable, it aided the state in establishing its case.

The trial court specifically found at the conclusion of the state's direct testimony (in denying a defense motion to dismiss) :

"I am not sure what ultimately the picture may finally be, but it is quite clear to me from the evidence, beyond all reasonable doubt, that the State has proved the offense charged, or included offenses which can be considered by the jury. . . ."

This determination was made by the trial court before the statements of the Gelhaar children were used for any purpose.

The defendant attempted to establish the defense of intoxication and the privilege of self-defense. Her own testimony on intoxication was rebutted by the testimony of police officers that she did not appear to be intoxicated shortly after the incident. Her testimony on intoxication is further rebutted by her clear and precise testimony of the events leading up to and following the stabbing of her husband. It was only the actual stabbing that the defendant was unable to recall at the trial. Her failure to recall the stabbing at the trial was rebutted by her admission just after the stabbing that all she could remember was picking up the knife and coming down on her husband.

The defendant's claim of self-defense was supported by the testimony of Mark and Christine. All of these defense witnesses were impeached by prior inconsistent statements.

The testimony was further impeached by the physical facts of the scene. The police officers who investigated the stabbing did not notice that the kitchen was in any sort of disarray. The deceased did not have any fresh scratches or bruises on his body (aside from a stab wound which was almost eight inches deep), nor did the defendant appear to be injured.[5]

In short, the state established its case; the defendant could not establish her defenses. It was not even necessary for the jury to give substantive weight to the impeaching evidence to find that the defendant had committed the crime alleged.

### Interest of Justice.

The defendant also asks the court to order a new trial in the interest of justice under sec. 251.09, Stats. The court has always declined to do so unless it appeared likely that the defendant should not have been found guilty. *Commodore v. State* (1967), 33 Wis. 2d 373, 147 N. W. 2d 283. This is not the case here.

*By the Court.*—Order affirmed.

---

[5] The defendant testified that she was injured at the neck from the struggle and that she had complained of the injury to the police and the matron at the city jail. None of the persons who was allegedly complained to could substantiate that testimony.