David A. VOGEL, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.†

Supreme Court

*No. 77–771–CR.  Argued April 1, 1980.—Decided May 13, 1980.*

(Also reported in 291 N.W.2d 838.)

† Motion for reconsideration denied, without costs, on June 9, 1980.

For the plaintiff in error-petitioner the cause was argued by *Steven P. Weiss,* assistant state public defender, with whom on the brief was *Richard L. Cates,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.  The plaintiff in error-petitioner, David A. Vogel, hereinafter defendant, was convicted as a party to the crime of armed robbery with concealed identity, contrary to secs. 943.32(2), 946.62 and 939.05, Stats.  He was tried before a jury on an information which listed armed robbery and concealing identity during the commission of a crime in two separate counts. Guilty verdicts were returned as to both counts and the defendant was given consecutive eight and two-year sentences for the respective violations.

A motion for a new trial was made and denied, and writs of error were taken both from the judgment of

conviction and the order denying the motion for a new trial.

The court of appeals affirmed the judgment and order of the trial court in a decision published at 87 Wis.2d 541, 275 N.W.2d 180 (Ct. App. 1979). This court granted the defendant's petition for review. Upon that review we have concluded that the decision of the court of appeals should be affirmed.

Four issues are presented for our consideration:

1. Is an unsworn, inconsistent prior statement by a prosecution witness in a criminal trial admissible under the Wisconsin Rules of Evidence as substantive evidence of a defendant's guilt?

2. Did the use of such a statement as substantive evidence deny the defendant his right to due process and to confront the witnesses against him, contrary to the sixth and fourteenth amendments to the United States Constitution?

3. Was the reference to the defendant's criminal record made during trial by a witness for the state so prejudicial as to require a new trial?

4. Can a person be criminally liable under sec. 946.62, Stats. 1975, the concealing identity statute, as a party to a crime, even though his own identity was not concealed during the commission of the underlying crime?

On December 7, 1976, at approximately 11:53 a.m., two men wearing nylon stockings over their heads entered and robbed the Country Store located just north of the Wisconsin-Illinois border in the city of Beloit. One of the men, who was carrying a twelve-inch curved knife, ordered the clerk on duty at the store to take the money out of the cash register and place it in a bag which the other man was carrying. After the clerk had done so, the two men fled out the door taking with them over $160 in cash. The clerk immediately sounded an alarm.

Daniel Vogel, the defendant's younger brother, and William Lindsey were shortly thereafter taken into custody for the robbery. They had been seen running from the rear of the store along a set of railroad tracks by Lieutenant John E. Penwarden of the South Beloit police department as he was returning from checking the false report of another crime in the area. Aware that the store had been robbed in the past, Penwarden decided to investigate. He was joined in foot-pursuit of the two suspects by Officer Harold Smith of the Beloit police department who was responding to the Country Store alarm. Officer Smith apprehended the defendant's brother at a railroad trestle along the tracks and Lindsey, who eluded Lieutenant Penwarden, was later taken into custody at his home.

A third police officer, Officer Kevin Connors of the Beloit police department, also responded to the alarm at the Country Store. As he was approaching the store from the Illinois side of the border, Officer Connors noticed a white Ford Mustang with its lights off parked at the end of Charles Street. Charles Street ends in a cul de sac near a set of railroad tracks which splits off from the tracks along which Daniel Vogel and William Lindsey had fled. As Officer Connors entered the dead-end block of the street, the lights of the white Ford came on and it began to move forward. Officer Connors turned on his flashing red lights and pulled the car over. The driver of the vehicle was David Vogel, the defendant herein. The defendant had a dog in the back seat of the car and appeared nervous and upset when he was asked what he was doing in that area. He explained he was just turning around.

After he had identified the defendant, Officer Connors returned his driver's license and allowed him to leave. A short time later, however, when he heard that the defendant's brother, Daniel Vogel, had been taken

into custody in connection with the robbery, Officer Connors informed headquarters that he had stopped the defendant in the area of Country Store and advised that the defendant should be stopped again for further questioning. The defendant was taken into custody at a friend's apartment the next morning.

As stated above, William Lindsey, one of the suspects, was arrested at his home during the early morning hours of December 8. He was taken to the South Beloit police station where at approximately 5 a.m. he admitted to police that he and Daniel Vogel had robbed Country Store. He returned with several police officers to the place where he had thrown the money taken in the robbery as he was fleeing from the police earlier. The money was recovered and Lindsey was returned to the station. Later that morning at approximately 10:15 a.m., Lindsey gave a signed, question and answer statement to the police concerning the robbery.

According to this statement, it was the defendant in this case, David Vogel, who first suggested that Daniel Vogel and Lindsey rob the Country Store. As they were sitting around drinking beer at the defendant's apartment on the evening of December 7, 1976, the defendant asked them if they were interested in "pulling a job." When they said they were, the defendant drove them to a tavern within short walking distance of the store and told them to meet him at his girl friend's house after they had completed the job.

The two of them then walked to the store. Daniel Vogel was armed with a knife and Lindsey carried a bag which the defendant had given him for the money. When they got there, however, they decided the store was too busy to rob at that time and went back to meet the defendant.

According to Lindsey's statement, when they explained to the defendant what had happened, he left his girl

friend's house and drove his brother Daniel and Lindsey to his grandmother's house where he borrowed two or three dollars from his sister. He then drove to a store where he purchased the nylon stockings which Daniel Vogel and Lindsey wore over their heads to conceal their identities during the robbery. The defendant then drove to a gas station and told Daniel to use the pay phone to call in a false alarm to the South Beloit police department to keep them busy while they were robbing Country Store.[1] After that had been done, the defendant drove Daniel and Lindsey to a store near Country Store and dropped them off. He told them that after they were done he would pick them up if he saw them while he was driving around, or else he would meet them at the railroad trestle near the American Legion Post in South Beloit.

At the defendant's trial the events leading up to Lindsey's statement implicating the defendant in the robbery were revealed through the testimony of the clerk on duty at the Country Store the night of the robbery and the various police officers involved in the investigation. Lindsey was called as a witness for the state and was asked to relate what had happened during the evening and early morning hours of December 7 and 8, 1976. However, this time Lindsey said nothing about the defendant's involvement in the robbery. He testified it was not until the defendant had dropped Daniel Vogel and

[1] It appears that rather than divert the South Beloit police department it was this call which brought Lieutenant Penwarden to the area in which the robbery occurred. South Beloit police received a call at approximately 11:50 p.m. on the night of the robbery that a woman was being beaten by a man at the Sentry Supermarket. There were two Sentry stores, however, within the South Beloit police department's jurisdiction and, because the caller failed to specify which, both were checked. The one Lieutenant Penwarden checked was in the immediate vicinity of Country Store.

himself off at a bar and driven away that the two of them decided to rob the Country Store. As Lindsey explained it at trial, the idea just all of a sudden came to them.

At this point in the trial the state sought to introduce into evidence the statement Lindsey had given to the police on the morning of his arrest. Over the objection of defense counsel, each question and answer contained in the statement was read individually to Lindsey and he was asked if he recalled giving that response. To each he replied that he could not. Lindsey claimed he was drunk at the time of his arrest and, as a result, had no memory of making any statement to the police. He stated that, in the condition he was in, he signed anything the police placed before him.

The state also presented the testimony of the clerk who was on duty at the store where the defendant bought the nylon stockings on the night of December 7, 1976, and that of Sheila Ford at whose apartment the defendant had been arrested. The store clerk positively identified the defendant as the person who had come into his store and purchased the women's nylon hose at about 11:30 p.m. on December 7, 1976.

Sheila Ford testified that at about 1:15 in the morning of December 8, 1976, the defendant came to her apartment, handed her some clothes and told her to get rid of them. She stated the defendant appeared nervous and upset, and indicated that his brother had been involved in an armed robbery. He did not say why he wanted the clothes disposed of.

The defendant testified in his own behalf. He admitted he had been with his brother and William Lindsey on the night of December 7, 1976, but denied he had ever said anything to them about a robbery. He also admitted he had purchased the nylon stockings, but explained that he had done so because his brother had

asked him to. He testified he did not know why his brother wanted them. The defendant also testified that he had gone down Charles Street because he had intended to get rid of the dog he had in the back seat. He said he was going to just let the dog loose in the woods near the railroad tracks, but then decided not to and was on his way out when Officer Connors stopped him.

The jury apparently disbelieved the defendant's testimony and returned guilty verdicts as to each count shortly after it commenced its deliberations.

The defendant's principal argument on review is that the trial court erred in permitting Lindsey's prior statement to be used as substantive evidence against him. He argues that the state's use of the statement as direct evidence of his guilt was contrary to both Wisconsin evidentiary law and federal constitutional provisions.

The state-law argument presented by the defendant is grounded on sec. 972.09, Stats. The pertinent portion of that section provides:

"Where testimony of a witness at any preliminary examination, hearing or trial in a criminal action is inconsistent with a statement previously made by him, he may be regarded as a hostile witness and examined as an adverse witness, and the party producing him may impeach him by evidence of such prior contradictory statement. . . ."

In *State v. Major*, 274 Wis. 110, 79 N.W.2d 75 (1956), the predecessor to sec. 972.09, Stats., was construed by this court as permitting the use of a witness' prior inconsistent statement for purposes of impeachment only. The trial court in that case considered the prior statement of a prosecution witness as affirmative proof of the defendant's guilt because it was corroborated in numerous details by the testimony of police officers. On appeal the state argued that the trial court's ruling was a proper application of sec. 325.35, the predecessor to sec.

972.09, and that the conviction should therefore be sustained.

This court rejected the state's argument. Noting first that it had long adhered to the rule that previous inconsistent statements of a witness cannot be accorded any value as substantive evidence, the court stated:

". . . The creation of sec. 325.35, Stats., by the enactment of ch. 535, Laws of 1945, in no way changed [this] rule of evidence. In enacting the chapter the legislature declared it to be an act 'relating to the *impeachment* of hostile witnesses in criminal actions.' Impeachment goes only to the credibility of the witness and the negation of his testimony." *Id.*, 274 Wis. at 113.

It is clear from this language that the actual basis of the court's holding preventing the substantive use of prior inconsistent statements was not sec. 325.35, Stats., but rather the long-standing rule against hearsay. In enacting sec. 325.35, the legislature had created a narrow exception to the hearsay rule by permitting the use of prior inconsistent statements for impeachment purposes at trial. *State v. Major, supra,* made clear that a statement admitted under that section could not be used substantively.

Although the general evidentiary rule preventing the substantive use of prior inconsistent statements was substantially modified in *Gelhaar v. State,* 41 Wis.2d 230, 163 N.W.2d 609 (1969), the court expressly refrained in that case from completely overruling *State v. Major, supra.* It held in *Gelhaar* that under certain conditions a witness' prior inconsistent statement could be regarded as substantive evidence but it expressly limited its holding to statements made by an opposing party's witness. Thus, the rule announced in *State v. Major, supra,* was retained to the extent that prior inconsistent statements of the state's own witnesses, even if hostile, could not be used substantively against the defendant.

*Gelhaar's* limited retention of the *Major* rule was subsequently reaffirmed in *Irby v. State,* 60 Wis.2d 311, 315, 210 N.W.2d 755 (1973), even though in that case the defendant was found to have waived his objection to the substantive use of the statement and, for that reason, the rule was not applied.

On the basis of these cases, the defendant contends that it is still the law in Wisconsin that the state may not use a prior inconsistent statement of its own witness as substantive evidence of the defendant's guilt. Applying that rule here, he argues, it clearly follows that the trial court erred in failing to limit the state's use of Lindsey's previous statement to simply impeaching his testimony at trial.

In rejecting the defendant's argument, the court of appeals relied on sec. 908.01(4) (a) 1, Stats.,[2] of the Wisconsin Rules of Evidence. That section had the effect of removing prior inconsistent statements from the general hearsay exclusion in those instances in which the declarant testifies at trial and is subject to cross-examination concerning the statement. The court of appeals concluded that in promulgating sec. 908.01(4)(a)1, under its inherent and statutory rule-making power, the court implicitly overruled *State v. Major, supra.* Thus, it held that under the new rules of evidence there is no impediment to the substantive use of the prior inconsistent statement of a witness called by the state. *Id.,* 87 Wis.2d at 549.

---

[2] "908.01 **Definitions.** The following definitions apply under this chapter:

". . .

"(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"(a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"1. Inconsistent with his testimony; or

". . ."

The defendant contends that this conclusion on the part of the court of appeals is not sound for two reasons.

First, he contends, sec. 908.01(4)(a)1, Stats., could not have overruled *State v. Major, supra,* because it was never intended to have that effect. As support for this contention, the defendant cites the Judicial Counsel Committee's comment to that section which reads in part:

"The rule here proposed would modify *Gelhaar* by eliminating the first limitation upon its rule, that is, the statement may be oral. In addition, *Gelhaar* was limited to the impeachment of an opposing party's witness and that limitation would be eliminated by this rule and s. 906.07. The *Gelhaar Case* did not modify the interpretation of s. 885.35, made in *State v. Major,* 274 Wis. 110, 79 N.W.2d 75 (1956), that the introduction of a hostile witness' statement as substantive evidence in a criminal case is not permitted; although *Gelhaar* expressed the view that the extension of the rule to a hostile witness situation was 'logical.' *The foregoing statute was renumbered s. 972.09 and broadened in the Criminal Procedure Act to withdraw the rule of State v. Major.* As broadened, the section retains the first limitation of *Gelhaar.* It is withdrawn by deletion from s. 972.09." [Emphasis added.] 59 Wis.2d R234.

It is clear from its comment that the committee was under the impression that the rule of *State v. Major, supra,* had been withdrawn by the legislature when it amended and renumbered sec. 972.09 in 1969.

However, the official comment to sec. 972.09 indicates that, rather than overruling *State v. Major, supra,* itself, the legislature was of the opinion, in reenacting the section, that the court had already done so in *Gelhaar v. State, supra.* According to the comment, "[t]he previous rule in Wisconsin found in State v. Major, 274 Wis. 110, 79 N.W.2d 75, has thus been overruled and the broadening of this statute should be of assistance to prosecutors at the preliminary examination who are faced with recalcitrant witnesses."

But, as stated above, the court in *Gelhaar* expressly refrained from completely overruling *State v. Major, supra.* Thus, the defendant points out, we have a situation in which sec. 972.09 was renumbered and broadened by the legislature under the mistaken view that the court had withdrawn the *Major* rule in *Gelhaar,* and then sec. 908.01(4)(a)1 is promulgated under the likewise erroneous view that the legislature had withdrawn the rule in renumbering and broadening sec. 972.09. The defendant further argues that because neither *Gelhaar* nor the 1969 amendment to sec. 972.09 had any effect on the rule of *State v. Major, supra,* and because sec. 908.01(4)(a)1 was not intended to have any effect on that rule, it necessarily follows that the rule must still be intact.

Although imaginative, the defendant's argument is erroneous. The fact that the Judicial Council Committee may have thought that the *Major* rule had been previously withdrawn by the legislature is simply irrelevant to the meaning of sec. 908.01(4)(a)1. The obvious purpose of that section is to remove prior inconsistent statements from the general hearsay exclusion when the declarant is available for cross-examination regarding the statement. It accomplishes that purpose in clear and unambiguous language. Thus, there is no need for this court to refer to the committee comments to determine its meaning. Such extrinsic aids to statutory construction are to be used only in the event a statute or rule is first found to be ambiguous.[3] Because the language of sec. 908.01(4)(a)1 is clear, it would be improper for the court to turn to the official comments to that section as a source of the drafter's intent.

However, even if the Judicial Council Committee's Comments were relevant, it still would not follow that sec. 908.01(4)(a)1 left unchanged the rule announced

[3] *State v. Kenyon,* 85 Wis.2d 36, 49, 270 N.W.2d 160 (1978); *State v. Tollefson,* 85 Wis.2d 162, 167, 270 N.W.2d 201 (1978).

in *State v. Major, supra.* For while the committee may have mistakenly assumed that prior inconsistent statements of a party's own witness were already admissible for substantive purposes, it certainly thought that they would remain so under the new rule. Thus, it cannot be said that the *Major* rule was intended to remain valid law under the new rules of evidence. Whether it was accomplished by the 1969 amendment to sec. 972.09 or by the promulgation of the rules of evidence, the substantive use of prior inconsistent statements by a party's own witness is now permitted.

The defendant also contends that sec. 908.01(4)(a)1 could not have abrogated the *Major* rule because sec. 908.-01(4)(a)1 is only a rule promulgated by the court whereas the rule in *State v. Major, supra,* is based on a statute (sec. 972.09) enacted by the legislature. He argues a court rule cannot supersede, amend or repeal a legislative enactment and, therefore, sec. 908.01(4)(a)1 could not have had such an effect on sec. 972.09.

The flaw in this argument by the defendant is his assumption that the rule announced by the court in *State v. Major, supra,* is based upon sec. 325.35, Stats. 1945, the predecessor to sec. 972.09. As explained above, the real basis for the court's holding in that case that a prior statement by a prosecution witness could not be used substantively was the long-standing rule against hearsay, not sec. 325.35. It was sec. 325.35, and subsequently sec. 972.09, which permitted the statement to be used for the limited purpose of impeaching the state's own witness, but it was the traditional rule excluding hearsay which prevented the statement from also being considered substantively. Sec. 972.09 itself is totally silent on the question of whether such a statement may be accorded substantive value. Thus, in promulgating sec. 908.01(4)(a)1, the court did not supersede or modify a legislative enactment, but changed only a rule of evi-

dence which had likewise originated with the court. This was entirely proper.

In addition, the defendant contends that sec. 908.01 (4)(a)1 could not have superseded the *Major* rule because the court is without authority to effect such a change in the substantive rights of criminal defendants. Although he concedes that evidentiary rules such as sec. 908.01(4)(a)1 are normally considered to be purely procedural, the defendant contends that they must be considered substantive when they affect the integrity of the fact-finding process. He argues the court has no authority to deprive criminal defendants of their substantive rights, and that, therefore, sec. 908.01(4)(a)1 could not have had the effect suggested by the court of appeals.

The difficulty with this argument is that it goes too far. Were we to accept the defendant's claim that this court is without power to effect changes affecting the integrity of the fact-finding process, not only would sec. 908.01(4)(a)1 be void, but so would all the other evidentiary rules promulgated by the court.

All rules of evidence are intended to, and do, affect the integrity of the fact-finding process. They are intended to improve that process by permitting the introduction of all relevant and credible evidence and to prevent its subversion by excluding material which would improperly mislead or distract the fact finder.

Sec. 908.01(4)(a)1 was adopted with this goal in mind. As such, it represents an appropriate exercise of this court's inherent and implied power, and also the specific rule-making authority granted it under sec. 251.-18, Stats. 1975.[4]

---

[4] "251.18 **Rules of pleading and practice.** The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits. Such rules

We therefore conclude that the court of appeals was correct in its holding that Lindsey's prior inconsistent statement was properly admissible under the Wisconsin Rules of Evidence as substantive evidence against the defendant. The statement in question was inconsistent with Lindsey's testimony at trial and he was available for cross-examination concerning it. Under sec. 908.01(4)(a)1, no more is required.

The defendant further argues, however, that even if Lindsey's statement was properly admissible under Wisconsin evidentiary law, its use at trial deprived him of rights guaranteed by the United States Constitution. He contends that the state's substantive use of Lindsey's prior inconsistent statement to prove its case against him deprived him of the general right to due process under the fourteenth amendment and the right to confront witnesses against him guaranteed by the sixth amendment and made applicable to the states through the fourteenth.[5]

It has been previously noted by this court and by the United States Supreme Court that compliance with a state's hearsay rule does not necessarily insure compliance with the constitutional mandate for confrontation in a criminal case.[6] ". . . [W]here constitutional rights

---

shall not abridge, enlarge or modify the substantive rights of any litigant. . . ."

[This section has since been renumbered sec. 751.12, Stats. 1977.]

[5] The sixth amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." In *Pointer v. Texas*, 380 U.S. 400, 403 (1965), the United States Supreme Court held that the right was fundamental and made obligatory on the states by the fourteenth amendment.

[6] *State v. Lenarchick*, 74 Wis.2d 425, 432, 247 N.W.2d 80 (1976); *State v. Olson*, 75 Wis.2d 575, 585, 250 N.W.2d 12 (1977); *California v. Green*, 399 U.S. 149, 155–156 (1970).

directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). Thus, even though the substantive use of Lindsey's prior inconsistent statement at the defendant's trial was permissible under state law, we must now decide whether it also comports with the cited provisions of the United States Constitution.

Although the defendant presents his constitutional challenge to the admission of Lindsey's statement in the form of two separate arguments under the headings due process and confrontation, we perceive both of these arguments as simply slight variations of the same central theme. Essentially, his position is that to convict a person on the basis of a witness' unsworn out-of-court statement of which he claims no recollection deprives him of his right to a fair trial. He claims that such statements are inherently untrustworthy because the defendant is denied the opportunity to effectively challenge them both at the time they are made and later in court.

In *California v. Green,* 399 U.S. 149 (1970), under facts similar to this case, the United States Supreme Court reversed a decision of the California Supreme Court and upheld a trial court's ruling admitting as evidence prior inconsistent statements made by a witness at the defendant's preliminary examination. The trial court in that case had also admitted into evidence several unsworn statements which, like Lindsey's, had been made to a police officer prior to trial. However, because the court found the statements made at the preliminary examination under oath and subject to cross-examination to be admissible, it concluded that it was unnecessary to determine whether the statements made to the police officer should also have been allowed. Neither party had specifically addressed the question of the admissibility of those statements and, furthermore, in view of the

court's holding regarding the other statements, it appeared to pose only a harmless-error problem which could more appropriately be resolved by the lower courts. Thus, the specific issue raised here was not decided.

Even though the court in *California v. Green, supra,* did not conclusively decide the precise issue raised here, its reasoning in support of the issue it did decide is very much applicable to this case.

The court indicated in *Green* that the primary dangers to be feared from the use of out-of-court statements in a criminal prosecution are substantially eliminated when the declarant of the statement is present in court and subject to effective cross-examination concerning it. It noted that the primary reasons for requiring that the defendant be allowed to confront his accusers are that it:

"(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Id.* 399 U.S. at 158.

Although an out-of-court statement may be made under circumstances subject to none of these protections, the court stated that such a statement regains most of them if the declarant is later present in court and testifies at trial. The protection provided by giving a statement under oath is regained, it said, because "the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury. *Id.* at 159. The protection afforded by the opportunity to cross-examine is reinstated by the fact that the declarant is now present in court and may be forced to explain the earlier state-

ment. And the protection afforded by the opportunity of the fact finder to observe the demeanor of the witness in making the statement is substantially recovered by the fact that "[t]he witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement." *Id.* at 160.

For these reasons, said the court in *Green*, ". . . there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.* at 158.

But despite the strong reasons in support of such a conclusion, the court found it unnecessary to hold that such statements were admissible in *California v. Green, supra.* Instead, it concluded that the case could more narrowly be disposed of on the basis of the statements made by the witness at the defendant's preliminary examination. Because these statements were made under oath and subject to cross-examination, the court found them to be admissible regardless of the witness' subsequent availability at trial.

In *State v. Lenarchick, supra*, this court did draw the conclusion which the United States Supreme Court stopped short of in *Green* and held that the admission of a witness' out-of-court, unsworn statement did not deprive the defendant of his constitutional right of confrontation. "[T]he right to a meaningful cross-examination," said the court, "remains a major criterion of constitutional confrontation." *Id.,* 74 Wis.2d at 441. Where the purported declarant of the statement admitted into evidence is present in court and is subject to full and ef-

fective cross-examination concerning it, there is no violation of the right to confrontation.

Although the defendant acknowledges our holding in *Lenarchick,* he contends that it does not control here because Lindsey's lack of recall concerning the statement deprived him of all opportunity for meaningful cross-examination. Thus, he argues, the primary requirement of constitutional confrontation was missing and the protections lost by the out-of-court character of the statement could not be regained.

There is some merit to at least the underlying premise to the defendant's argument. It has long been recognized that more than a simple face-to-face encounter is required in order to fulfill the defendant's constitutional right to confront the witness against him. In *Bruton v. United States,* 391 U.S. 123 (1968), the United States Supreme Court held that, where a witness clothes himself with the cloak of the fifth amendment, a meaningful confrontation is denied. And in *Virgil v. State,* 84 Wis.2d 166, 187, 267 N.W.2d 852 (1978), this court held that a witness who simply refuses to testify regarding his prior statement and the matter contained therein was not subject to a meaningful cross-examination sufficient to fulfill the constitutional mandate of confrontation. However, neither the United States Supreme Court,[7] nor this court, has held that a witness' claim of a lack of recollection concerning his out-of-court statement prevents a meaningful confrontation such as to implicate a defendant's right to confront the witness against him.

---

[7] In *California v. Green, supra,* the witness whose out-of-court statement was introduced against the defendant also claimed a lack of memory. The United States Supreme Court said that whether the witness' lapse of memory so affected the defendant's right to cross-examine as to make a critical difference in the application of the Confrontation Clause was an issue which was not ripe for decision at that time. 399 U.S. at 168–169.

The same argument that the defendant makes here was also presented in *State v. Lenarchick, supra.* That case involved a statement given by a witness to a police officer which purported to recount the defendant's admission to the offense for which he was on trial. When called upon to repeat her account at that trial, the witness denied all recollection of the defendant's admission and of her statement to the police recounting it. The statement was then introduced, over the objection of the defendant, through the testimony of the police officer to whom it was made. On appeal the defendant claimed that the right to cross-examine a witness who professed no recollection of his prior statement or the matter asserted therein was tantamount to no cross-examination at all and, therefore, the admission of the statement at trial denied him the right to confrontation.

Without actually deciding whether a witness' claimed lack of memory could deny a defendant the right of confrontation, we held that the loss of memory claimed by the witness in that case did not.[8] The record revealed that her purported loss of memory was not complete, but instead was selective and entirely favorable to the defense. It also appeared that the defendant's failure to fully cross-examine the witness was due to purely strategic considerations, rather than a lack of opportunity. For this reason, we concluded that the defendant's claim of constitutional error was unfounded.

The court of appeals applied this same analysis in upholding the admission of Lindsey's statement in this case. It found his loss of memory to be "somewhat selective" and favorable to the defendant. In addition, it felt that the defendant's decision not to cross-examine the witness as to his testimony was a matter of trial technique. It

[8] *See also: Pohl v. State*, 96 Wis.2d 290, 291 N.W.2d 554 (1980).

concluded that Lindsey's professed lack of recall "was incomplete and did not so affect the opportunity to cross-examine as to make a 'critical difference' in the application of the confrontation clause." 87 Wis.2d at 556.

We believe the analysis of the court of appeals is correct. The record clearly establishes that Lindsey's professed lack of recall was only limited to the statement given to the police and, even as to the statement, his loss of memory was not complete. Lindsey testified that he was drunk at the time of his interrogation and that, because of his condition, he was willing to sign anything the police placed before him. In effect, he denied that the statement was his.

Quite apart from denying the defendant an opportunity for meaningful cross-examination, this response by the state's witness seems to have invited it. It provided the defense with as strong a basis for attacking the truthfulness of Lindsey's statement as was possible under the circumstances. Aware of this opportunity, defense counsel did cross-examine Lindsey and attempted to elicit further support for his claim that he was intoxicated and unaware of what he was signing by questioning him as to how much he drank during the hours preceding his questioning. This also Lindsey remembered and related at trial. That the defendant's cross-examination of Lindsey nevertheless proved to be ineffective indicates not the unavailability of cross-examination, but rather the incredulous character of Lindsey's claim that he was still intoxicated more than ten hours after he had taken his last drink and after he had, in the meantime, robbed a store, successfully eluded the police, returned home, and then led the police back to where he had dropped the money taken in the robbery.

Perhaps even more important than Lindsey's recollection regarding his statement is the fact that he completely remembered and testified fully to the actual

events that were in question. He claimed no fifth amendment protection and was responsive to each question asked concerning the robbery of Country Store. On direct examination he admitted and recounted his own involvement and that of the defendant's brother in the robbery. He testified that they had decided to rob the store only after the defendant had dropped them off and driven away.

The effect of this testimony, along with the admission of Lindsey's earlier statement, was to place before the jury two conflicting accounts regarding the defendant's involvement in the robbery. Although neither the defendant, nor the jury, was present when Lindsey related the earlier account to the police, its truthfulness, as well as that of the account given at trial, could be challenged and evaluated at trial through cross-examination under oath in the presence of the jury. Under these circumstances, we believe the defendant was given an adequate opportunity to confront the witness against him and the statement was properly admitted into evidence.

In addition to admitting Lindsey's statement into evidence against him, the defendant contends that the trial court also erred in failing to grant his motion for a new trial because of the prejudicial remarks made by one of the witnesses for the state.

The remarks in question were made by a police officer in response to a question put to him by the district attorney. The officer was asked what suggestions he made, following his apprehension of the defendant's brother, as to possible ways to proceed in the investigation. Prefatory to answering the question, the officer stated that he was aware that the defendant had been running with a partner in past burglaries. An objection was immediately made and sustained, and the trial court instructed the jury to disregard both the question and answer.

Despite these precautions, however, the defendant now contends that the officer's reference to his committing other burglaries in the past was so prejudicial as to require a new trial. We cannot agree.

The rule for determining whether an error committed at trial is sufficiently serious to justify granting a new trial was stated in *Moore v. State,* 83 Wis.2d 285, 296, 265 N.W.2d 540 (1978) as follows:

". . . the fact that the trial court permitted an improper question concerning the prior criminal conduct of the witness, does not mean the judgment should be reversed *ipso facto.* Under sec. 817.37, Stats. [footnote omitted] a judgment will not be reversed or a new trial granted unless it appears that the error has affected the substantial rights of the party seeking relief. The effect of erroneously admitted evidence must be realistically evaluated in the context of the case, and a new trial will not be granted unless the error was so prejudicial that a different result might have been reached if the evidence had not been admitted. . . ."

In this case, not only was the prejudicial remark immediately stricken and a curative instruction given but, in addition, almost the same information was properly offered into evidence when the defendant himself took the stand. On cross-examination, the defendant admitted that he had twice been convicted of a crime.

Under these circumstances, we do not believe the officer's remarks substantially affected the defendant's rights such that a different result might have been reached if they had not been made.

Lastly, the defendant argues that his conviction as a party to the crime of armed robbery with concealed identity is improper because sec. 946.62, Stats. 1975, the concealing identity statute, does not define a separate substantive crime and therefore sec. 939.05, the general party-to-a-crime statute, cannot properly be applied. He

contends that sec. 946.62 merely enhances the potential penalty of anyone who commits a crime while concealing his identity so as to avoid apprehension. Because it does not define a separate substantive crime by itself, he argues, one cannot be criminally liable for its violation simply by virtue of his status as an accomplice to the underlying crime.

The same issue was presented in *Schroeder v. State,* 96 Wis.2d 1, 291 N.W.2d 460 (1980), a case also decided this month. In *Schroeder,* we stated that although sec. 946.62, Stats. 1975, does not define an independent substantive offense by itself, it does create an aggravated form of another crime when charged in conjunction with another statute. We held that the aggravated form of the other crime is a substantive offense for which one may be found criminally liable as an accomplice.

The same conclusion applies here. The defendant was charged and convicted of armed robbery with concealed identity as a party to the crime, even though, as a matter of fact, he personally was neither armed nor masked during the commission of the offense. His conviction is not contrary to law. Under sec. 939.05, one is liable for the criminal conduct of others where he is shown to be a party to that conduct. Here, the defendant was shown to be more than merely a minor accomplice to the Country Store robbery. According to the evidence presented at trial, he planned it and even bought the stockings used as masks. Therefore his conviction and liability for the full aggravated form of that crime are entirely proper.

*By the Court.*—The decision of the court of appeals affirming the judgment and order of the trial court is affirmed.