State of Wisconsin, Plaintiff-Respondent,
v.
Frank L. Little, Defendant-Appellant.
No. 04-0269-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 29, 2004.
¶1 HIGGINBOTHAM, J.[1]
Frank L. Little appeals a judgment of conviction for criminal damage to property pursuant to WIS. STAT. § 943.01. Little argues that the evidence produced at trial was insufficient to support a conviction and violated his due process rights.[2] We conclude that the recanted statement of the victim, along with other corroborating evidence, was sufficient for a reasonable jury to find Frank Little guilty beyond a reasonable doubt. We therefore affirm the judgment of conviction.

FACTS
¶2 Little and Angela Wing have been romantically involved for approximately ten years. The charges against Little stem from an incident between him and Wing that occurred on the evening of October 18, 2002, resulting in charges of battery, criminal damage to property and disorderly conduct against Little.
¶3 At a jury trial on July 16, 2003, four witnesses testified: Little, Wing, City of Holmen Police Officer Shane Collins and Rae Ann Hansen, Wing's friend. Collins testified that at approximately 11 p.m. on the night of October 18, 2002, he was dispatched to Wing's home where he made contact with Little. Collins testified that Little showed him receipts for certain property and stated he was moving out. Little also told Collins that "all this stuff was his." Collins asked Little whether there was a problem that night and Little said, "no." Little later stated no argument occurred that night. Collins told Little that since there was no victim, his presence was no longer necessary and left the trailer home.
¶4 Collins then testified that Little contacted him later that evening. Little told Collins that Wing's son had come home and was causing trouble. Collins went back to Wing's trailer where he contacted Wing's son. Shortly thereafter, Wing and Hansen arrived at the trailer. Collins testified that Wing appeared visibly upset and was rather quiet spoken. Collins interviewed Wing who told him that she and Hansen were at a tavern and went to the trailer to retrieve some money. Wing said that some money was missing, she blamed Little for the missing money and an argument ensued. Wing told Collins that Little essentially battered her and then demolished their bedroom. Collins testified that Wing informed him that Little had picked up a twenty-seven inch television and had thrown it to the floor; he also picked up a floor console television and rolled it across the bedroom, threw the computer and kicked the television and damaged a lamp and a table. Collins testified that when he asked Wing to whom the property belonged, Wing said the property belonged to her. Wing prepared a written statement that night and gave it to Collins the next day.
¶5 Collins testified that when he stopped by to see how Wing was doing the evening following the incident, Wing was concerned about the property damage and indicated she would provide an estimate of the damage. Collins further testified that Wing appeared concerned that Little "threw everything down and broke it and tossed it around and flipped the TV and the microwave." Collins testified that these items were still in the trailer after Little had removed all the items he had stated belonged to him. Collins did not document either of these statements in his police report nor was there any indication of property ownership in Wing's written statement.
¶6 Little testified at trial that the items he damaged the evening of October 18, 2002, belonged to him as he had acquired them from his workplace and brought them into Wing's trailer. Little also testified he had called the police to the trailer "because I figured if I had somebody there with me that I couldn't be accused of taking anything of nobody else's, because I had my receipts for everything that I was taking."
¶7 Wing's trial testimony, in large part, contradicted her statements to Collins as well as the testimony of other witnesses. Wing testified that another man was at the trailer during the argument but Hansen and Little both testified that only they and Wing were present. Wing had never reported the presence of another man to Collins. Wing also testified that Little had called the police before the argument but both Little and Hansen testified that Little had phoned the police post-argument. Further, Wing's written statement indicated the microwave oven was thrown to the floor but, at trial, Wing claimed to not remember this statement.
¶8 Also contrary to Collins' testimony, Wing testified she did not tell Collins that she owned the damaged property. Wing did not directly reject ownership rights but stated
And I mean as far as the stuff that was broken, Frank brought that stuff into the house, so I mean in all actuality that is his stuff. It was brought from our job, which that's the type of work that we were doing. I guess I staked ownership because it was in my house.
When Wing was asked if she would view the property as shared, she stated
I mean the computer, I mean I had that  I had asked [Little] to see what he could do about getting one so the kids had a computer. The TV was his. I mean I had a TV. That was a bedroom TV he had brought home. I guess the only ownership I felt was mine is because it was placed in the house that I owned.
Wing read the statement she gave to Collins the day after the incident to the jury, which states:
I, Angie Wing, came over to the house to get my money in the amount of $70 and it was not there. I then wenttold Frank to give me my money and all hell broke loose. He then started to push and shove me in the bedroom. Then the TV was tossed to the floor, the microwave to the floor, and the TV cart was picked up to smash the rest of what was left.
¶9 However, consistent with Collins' testimony, Wing admitted to telling Collins that Little "had broke some stuff" and that she would provide an estimate for the property that Little had damaged. Wing admitted she never provided the estimate because she felt she was just as much to blame as Little for the resulting damage. However, Wing also testified on cross-examination that Little brought the items he knocked over into the house, implicitly acknowledging the items belonged to Little. Wing claimed responsibility for the argument by stating she was the initiator.
¶10 Hansen testified at trial that she observed Little and Wing yelling at each other and that she observed Little pick up and throw a computer, the microwave and both televisions located in the bedroom. Little's trial counsel did not cross-examine Hansen on these points.
¶11 At the close of trial, the jury found Little not guilty of the battery charge but guilty of criminal damage to property and disorderly conduct. Little filed a post-trial motion to dismiss the criminal damage property count claiming there was insufficient evidence to prove beyond a reasonable doubt that the two televisions, the computer and the microwave oven belonged to another person and that Little had knowledge that these items belonged to another person. The trial court denied the motion, acknowledging that the evidence was "slim" but concluded the jury was entitled to rely on Collins' testimony as evidence. The trial court withheld sentence for both convictions and placed Little on probation for one year. Little appeals only the criminal damage to property judgment of conviction.

DISCUSSION
¶12 The standard of review in determining the sufficiency of the evidence to sustain a criminal conviction is well established:
The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced [of the defendant's guilt] beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true . . .. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. . ..
State v. Poellinger, 153 Wis. 2d 493, 503-04, 451 N.W.2d 752 (1990) (citations omitted). The parties agree that Wisconsin allows the use of prior inconsistent statements as substantive evidence. Vogel v. State, 96 Wis. 2d 372, 386, 291 N.W.2d 838 (1980).

Sufficiency of Evidence Regarding Damage to Property
¶13 Little first argues that the State did not produce sufficient evidence to prove beyond a reasonable doubt that damage was, in fact, caused to the televisions, computer and microwave oven. Little contends there was no specific evidence of damage, just testimony that "stuff" was broken which, in his view, is insufficient to sustain a conviction.
¶14 In response, the State argues we should not consider this issue because it was raised for the first time on appeal. Further, the State claims even if we were to consider the issue on appeal, Little could not prevail because defense counsel conceded the damage to property in his closing statement at trial. We agree.
¶15 Little conceded this issue at trial when he stated, "there's no dispute that there was some property damaged" during his closing argument. Little may not now challenge proof of damage to the property.

Sufficiency of Evidence Regarding Property Ownership
¶16 Little further argues there was insufficient evidence to prove that the damaged property was property belonging to another and that he was aware that the property did not belong to him. According to Little, the only evidence of Wing's ownership of property was a prior inconsistent statement made by Wing. Little alleges a reasonable jury could not find him guilty beyond a reasonable doubt "based solely upon an alleged, uncorroborated, non-transcribed, inconsistent prior statement of a witness, when that witness denies making the statement." While Little does not challenge the admission of the prior inconsistent statement into evidence, he claims his constitutional right to due process was violated because the prior inconsistent statement was unreliable and was the only evidence supporting his conviction.
¶17 Little concedes it is the function of the trier of fact to fairly resolve conflicts in the testimony, to weigh evidence and to draw reasonable inferences from the facts. However, Little contends the problem in this case is the lack of evidence to weigh. Little claims the evidence offered at trial is not qualitatively or quantitatively sufficient to support a conviction. Therefore, according to Little, the question is whether a conviction may stand when based solely upon a prior inconsistent statement.[3] Because we conclude the testimony by Collins, Hansen, Little and Wing corroborates the prior inconsistent statement, we need not address this argument. We further conclude there is more than sufficient evidence in the record to corroborate Wing's prior inconsistent statement.
¶18 Wing agreed at trial that she promised to provide an estimate of the damage to Collins, which is consistent with the behavior of an owner. Wing testified that Little brought home the computer for the kids to use, implying at least joint ownership of the property. Collins testified that Little told him he had removed all his belongings from the trailer and Collins observed the computer, the microwave and the two televisions remaining in the trailer after Little provided this statement. Wing testified she told Collins that Little had damaged some items and that one of the televisions belonged to her. Hansen testified she observed Little pick up and throw the televisions, the computer and the microwave.
¶19 When there is conflicting testimony, the jury is charged with making credibility determinations. Poellinger, 153 Wis. 2d at 506. Given the inconsistencies in Wing's testimony, we conclude that the jury would not have acted unreasonably in dismissing all or any part of it. Implicit in the jury's finding is that Collins was a more credible witness than Wing.
¶20 Further, the jury is allowed to draw reasonable inferences from the evidence. Id. at 506. The jury had the opportunity to take note of the motives of both Wing and Little to testify falsely and the absence of similar motives of Collins. Under Poellinger, we must adopt the reasonable inference that supports the finding of the jury. Id. at 504-05. It is a reasonable inference that Wing falsified her testimony to protect her long-term boyfriend.
¶21 In sum, we conclude that there was sufficient evidence to corroborate Wing's prior inconsistent statement and support Little's conviction. We therefore affirm the judgment of the circuit court.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] While Little appeals the judgment of conviction, he does not appeal the trial court's order denying dismissal of the criminal damage to property charge. Therefore, we do not review the order here.
[3] Little argues the guidelines established by the Seventh Circuit in Vogel v. Percy, 691 F.2d 843 (7th Cir. 1982), for admitting a prior inconsistent statement should apply here in determining the sufficiency of the evidence to convict Little for criminal damage to property. The State claims we should apply the reasoning of Ticey v. Peters, 8 F.3d 498 (7th cir. 1993), where the court determined that the Vogel guidelines merely provide a "framework" in determining the admissibility of a prior inconsistent statement under circumstances where it is argued that the statement was insufficient to support the defendant's conviction. The simple question presented in this appeal is whether there was sufficient corroborating evidence to Wing's prior inconsistent statement to support Little's conviction. Because we conclude that the record does provide for sufficient corroborating evidence, we do not address these arguments.